UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ENSIGN YACHTS, INC, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:09-cv-209 (VLB) |
| JON ARRIGONI ET AL., | : | |
|     Defendants. | : | November 19, 2009 |

**MEMORANDUM OF DECISION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR PREJUDGMENT REMEDY [Doc. #12]**

The Plaintiff, Ensign Yachts, Inc. ("Plaintiff" or "Ensign") moves for a prejudgment remedy of attachment and garnishment against Defendant Jon Arrigoni ("Defendant" or "Arrigoni") in the amount of $971,653.63.[1]  For the reasons set forth below, the Plaintiff's motion [Doc. #12] is GRANTED.

I.  **Factual and Procedural Background**

This case involves the transit of the Plaintiff's 2008 55' Cigarette Super Yacht from New Jersey to Florida in December 2007.  The Plaintiff alleges that the vessel was damaged during transit while in the custody of Arrigoni as a result of Arrigoni's negligence.  The Plaintiff further alleges that it lost its sale of the vessel on January 15, 2008 because of the damage.  The vessel was ultimately

---

[1]  The Plaintiff's application for prejudgment remedy requested a prejudgment remedy in the amount of $933,333.  However, at the prejudgment remedy hearing held on October 16, 2009, the Plaintiff indicated that the amount it is seeking is actually $971,653.63.  This amount is reflected in a damages analysis prepared by the Plaintiff and submitted into evidence, along with supporting documentation, at the hearing.  See Pl. Ex. 2.

repaired and resold to another buyer at a lower price on December 2, 2008. In December 2007 and January 2008, the Plaintiff submitted its claim to Arrigoni for damages to the vessel, but Arrigoni refused to pay. Arrigoni's underwriter, Lloyds of London ("Lloyds"), declined coverage for the loss on July 7, 2008. On February 4, 2009, the Plaintiff filed suit against Arrigoni, his underwriter Lloyds, and his underwriter's purported agent Saperstein Agency ("Saperstein"). The Plaintiff's amended complaint asserts claims for breach of contract, violation of the Carmack Amendment to the Interstate Commerce Commission Termination Act of 1995 (49 U.S.C. § 14706), breach of implied contract, negligence, breach of the covenant of good faith and fair dealing, loss of sale, breach of the Connecticut Unfair Trade Practices Act and the Connecticut Unfair Insurance Practices Act, bad faith, fraud, and tortious interference with contract.

The Plaintiff originally moved for a prejudgment remedy against all of the Defendants on March 17, 2009 [Doc. #12]. In connection with it's motion for prejudgment remedy, the Plaintiff also filed a motion for disclosure of property and assets [Doc. #16]. By Order dated July 6, 2009 [Doc. #68], the Court denied the motion for prejudgment remedy on the basis that the Defendants had indicated that they possess adequate insurance to cover the judgment sought by the Plaintiff, and accordingly denied the motion for disclosure of assets as moot. Subsequently, on July 8, 2009, the Plaintiff moved the Court to reconsider and modify its July 6, 2009 order so as to allow its prejudgment remedy application against Arrigoni only. The Court granted the Plaintiff's motion for

reconsideration by Order dated August 13, 2009 [Doc. #81]. The Court also allowed paper discovery to proceed as to Arrigoni. This Court held a prejudgment remedy hearing on October 16, 2009. At the hearing, Arrigoni testified on his own behalf and James Ross, Ensign's President, testified on behalf of the Plaintiff.

## II. Discussion

In First Equity Group, Inc. v. Culver, No. 3:08-cv-1893, 2009 WL 353490, at *5-*7 (D. Conn. Feb. 11, 2009), this Court set forth in detail the standard of review applicable to the issue at hand:

"The Connecticut Appellate Court articulated the legal standard for reviewing an application for prejudgment remedy in Marlin Broadcasting v. Law Office of Kent Avery, 101 Conn. App. 638, 646-647, 922 A.2d 1131 (Conn. App. 2007). '[P]rejudgment remedy proceedings are not involved with the adjudication of the merits of the action brought by the plaintiff or with the progress or result of the adjudication. They are only concerned with whether and to what extent the plaintiff is entitled to have the property of the defendant held in the custody of the law pending adjudication of the merits of the action.' Id. at 646, 922 A.2d 1131, quoting Cahaly v. Benistar Property Exchange Trust Co., 73 Conn. App. 267, 273, 812 A.2d 1 (Conn. App. 2002), rev'd on other grounds, 268 Conn. 264, 842 A.2d 1113 (Conn. 2004)."

"'The purpose of a prejudgment remedy of attachment is security for the satisfaction of the plaintiff's judgment, should he obtain one . . . It is primarily

designed to forestall any dissipation of assets by the defendant and to bring [those assets] into the custody of the law to be held as security for the satisfaction of such judgment as the plaintiff may recover . . . The adjudication made by the court on [an] application for a prejudgment remedy is not part of the proceedings ultimately to decide the validity and merits of the plaintiff's cause of action. It is independent of and collateral thereto . . . .'" Id. at 646-47, 842 A.2d 1113.

"'§ 52-278d(a) provides in relevant part that a hearing on a prejudgment remedy shall be limited to a determination of . . . whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or setoff, will be rendered in the matter in favor of the plaintiff . . . If the court, upon consideration of the facts before it and taking into account any [defenses] . . . finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the court.' (Internal citations and quotations omitted .) Id. at 647, 842 A.2d 1113; see also Benton v. Simpson, 78 Conn. App. 746, 750-51, 829 A.2d 68 (Conn. App.2003). The statute has not been amended since the date of that decision."

"The probable cause standard is settled and well defined. 'The legal idea

of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a [person] of ordinary caution, prudence and judgment, under the circumstances, in entertaining it . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false . . . .' Id. at 647, 829 A.2d 68."

"The Court's decision must be based on its appraisal of the legal issues and the credibility of the witnesses and other evidence. See Nash v. Weed and Duryea Co., 236 Conn. 746, 749, 674 A.2d 849 (Conn. 1996). The court has 'broad discretion to deny or grant a prejudgment remedy . . . .' State v. Ham, 253 Conn. 566, 658, 755 A.2d 176 (Conn. 2000)."

The Plaintiff argues that it is entitled to a prejudgment remedy against Arrigoni because his underwriter Lloyds declined coverage for the losses suffered by the Plaintiff pursuant to a letter dated July 7, 2008. The declination letter sent by Lloyds to Arrigoni indicated three grounds for the denial of coverage: 1) the insurance agreement provided coverage for "all risks of physical loss or damage from an external cause," and it was not documented that the loss was the result of an external cause; 2) the claim alleges loss of use and consequential loss, which are specifically excluded by the insurance policy; and 3) the claim seeks coverage for transportation of cargo for charge, which is specifically excluded by the policy (i.e., the policy covers only transportation of cargo without charge). Pl. Mem. in Support of Motion for Partial Reconsideration, Ex. A [Doc. #74]. Accordingly, the Plaintiff argues that Arrigoni has no insurance

coverage for the loss, and therefore it may only be able to satisfy any judgment that the Court may award from Arrigoni's personal assets.  As a result, the Plaintiff seek a prejudgment remedy of attachment and garnishment in the amount of $971,653.63 against Arrigoni.  Specifically, the Plaintiff seeks to attach Arrigoni's interest in any trucks, trailer and/or equipment and appurtenances at 49 Commerce Street, Clinton, Connecticut, and further seeks to garnish Arrigoni's interests in any bank accounts and/or any other intangible assets ascertained pursuant to a separately filed Motion for Disclosure of Assets.

  Arrigoni presents three arguments in opposition to the Plaintiff's application for prejudgment remedy.  First, Arrigoni argues that the Plaintiff cannot show that probable cause exists to believe that it will prevail at trial as to Arrigoni in the amount sought in the application.  Arrigoni asserts that the Plaintiff's breach of contract, state statutory and common law claims are preempted by the Carmack Amendment because the vessel was transported in interstate commerce and the physical damage to the vessel occurred while the vessel was en route.  Therefore, the only cause of action available against Arrigoni is the claim brought pursuant to the Carmack Amendment, which limits the Plaintiff's recovery.  Under the Carmack Amendment, Arrigoni contends, the Plaintiff may not recover enhanced damages of any kind, nor may it recover attorney's fees.  Instead, the Plaintiff may recover only the actual loss or damage to its property caused by the carrier involved in the shipment of its vessel.  <u>See</u> 49 U.S.C. § 14706.  Relying upon the Second Circuit's decision in <u>Jessica Howard</u>

**Ltd. v. Norfolk Southern Railroad Co.**, 316 F.3d 165, 168-69 (2d Cir. 2003), Arrigoni argues that the measure of damages in Carmack cases is generally the difference between the market value of goods at the time of delivery and their market value had they arrived in good order at the time when they were meant to be delivered. According to Arrigoni, the Plaintiff's materials show that the majority of the damages claimed have nothing to do with a reduction in actual market value, but are instead related to processing the claim, changes in market conditions that occurred during that time, and the arrest of the vessel through a civil action with which Arrigoni had nothing to do.

Second, Arrigoni argues that a prejudgment remedy is not warranted because Arrigoni was adequately insured. Arrigoni was insured by Lloyds, but Lloyds declined coverage for the claim. The Plaintiff has asserted a number of claims in this regard against Lloyds and it's purported agent Saperstein. Arrigoni argues that if the Court finds there is probable cause that the plaintiff will prevail in its claims against these defendants, it should also find that no prejudgment remedy is warranted against Arrigoni.

Third, Arrigoni argues that a prejudgment remedy is not warranted against him because there can be no showing of a dissipation of assets covering the Plaintiff's loss because Arrigoni has no assets to dissipate. Arrigoni asserts that his assets are extremely limited, and even if the Court were inclined to grant the Plaintiff's application, exemptions available to Arrigoni would likely eclipse the value of any assets that he has. Further, to the extent that Arrigoni possesses

assets such as trucks and trailers, these vehicles are leased and are utilized on a regular basis in his business.

The Court concludes that the Plaintiff has established probable cause that a judgment will be rendered in this matter in it's favor.  During the October 16, 2009 hearing, Arrigoni testified that he had entered into a contract with Ensign to deliver the vessel from Jersey City, New Jersey to Miami, Florida.  He admitted that the vessel was in good condition when he picked it up for transport.  His testimony suggested that he did not perform the due diligence necessary to ensure that he could deliver the vessel to its intended destination, and as a result of his inability to obtain the requisite permits from state authorities, he had to deliver the vessel to an alternate location in Fort Lauderdale, Florida.  Arrigoni also admitted that the vessel became partially dislodged from his vehicle and came into contact with the surface of the highway during transit in Florida, and that he did not pull over to address the issue but instead continued to drive the vessel to its final destination.  Finally, he testified that the vessel was damaged when he dropped it off in Fort Lauderdale.  He offered no evidence to support any defenses to this action.

Under the Carmack Amendment, a plaintiff seeking damages from a carrier for injury to a shipment may make out a prima facie case by showing "delivery in good condition, arrival in damaged condition, and the amount of damages." Missouri Pac. R.R. Co. v. Elmore & Stahl, 377 U.S. 134, 138 (1964).  Arrigoni's testimony clearly demonstrates that the vessel was delivered to him in good


condition, and that it arrived in Fort Lauderdale in damaged condition. In addition, as discussed below, the Plaintiff submitted testimony as well as documentary evidence demonstrating the amount of damages it sustained. Therefore, the Plaintiff has established probable cause that Arrigoni will be found liable on the merits in this case.

Moreover, Arrigoni's argument that he is properly insured for the loss has no merit. As discussed above, Lloyd's declined coverage for the Plaintiff's losses pursuant to a letter dated July 7, 2008. See Pl. Mem. in Support of Motion for Partial Reconsideration, Ex. A [Doc. #74]. Arrigoni has provided no evidence that he has any other insurance that could be used to satisfy a judgment against him in this case.

As to the amount of damages, Ross testified that, due to the damage to the vessel that resulted from it coming into contact with the highway, Ensign incurred total damages of $659,063.71. Ensign's damages included costs for storage, repairs, detailing, and surveying, public adjuster fees, loan-related expenses because Ross needed to take out a loan to pay for repairs, and lost profits because the original purchaser of the vessel canceled its purchase agreement and the vessel was eventually sold at a lower price. At the hearing, the Plaintiff admitted into evidence a detailed damages analysis along with documentary support for each category of damages claimed by Ross. See Pl. Ex. 2. In addition to damages, Ensign seeks statutory interest pursuant to Conn. Gen. Stat. § 37-3a(a) in the amount of $69,663.01 and attorney's fees in the

amount of $242,908.91, representing a 1/3 contingency fee.

Even assuming that the Carmack Amendment preempts all other causes of action brought by the Plaintiff in this case, the testimony and evidence admitted at the hearing establishes probable cause that a judgment will be rendered in this matter in it's favor for the amount of the damages sought.  Courts in this Circuit have found that consequential damages are recoverable under the Carmack Amendment.  See e.g., Project Hope v. M/V IBN SINA, No. 97-CV-3853, 2001 WL 1875854, at *2-*3 (S.D.N.Y. July 17, 2001) (upholding award of consequential damages under Carmack Amendment for fees and expenses for surveying, storage, transport, and disposal of damaged cargo); Consol. Rail Corp. v. Primary Indus. Corp., 868 F. Supp. 566, 574 n.7 (S.D.N.Y. 1994) (stating that consequential damages, including settlements that counterclaim plaintiff was forced to pay to its customers and costs relating to the eventual demise of it's business, were recoverable under the Carmack Amendment).  Ross testified at the hearing that he had informed Arrigoni of the pending sale of the vessel and required that Arrigoni provide proof that he had at least $1,000,000 in carrier insurance prior to delivering the vessel to Arrigoni for transport.  Thus, Arrigoni was apprised both of the value of vessel and of the need for prompt delivery so that the sale could be effectuated.  Accordingly, the Court finds, for purposes of the prejudgment remedy application, that each of the categories of damages sought by the Plaintiff were foreseeable and within the contemplation of the parties at the time they entered into their contract for transport of the vessel.  See Project Hope, 2001 WL

1875854 at *2.

The authority cited by Arrigoni does not dictate a contrary result. In Jessica Howard Ltd. v. Norfolk Southern R.R. Co., 316 F.3d 165, 166 (2d Cir. 2003), the plaintiff brought suit alleging that the defendant lost 1243 garments from a shipment of 4440 total garments delivered from Shanghai, China to New Jersey. The contract between the parties included two liability options, "Standard" and "Carmack." The Standard provision limited liability to "actual physical loss or damage to the cargo itself, plus any costs reasonably incurred in efforts to mitigate the loss or damage." Id. at 167. The district court determined that the Standard provision applied, and further interpreted the "actual physical loss" to be the plaintiff's cost of acquiring goods in Shanghai. Id. In so holding, the district court reasoned that the Carmack provisions limited liability to the fair market value of the lost goods at destination, and that measuring liability under the Standard provision "would render the standard liability option meaningless." Id. at 167-68. The district court further reasoned that the Standard provision could not measure "actual physical loss" by the destination value of the garments because doing so would compensate for lost profits, a type of consequential damages, and the Standard provision expressly excluded consequential damages. Id. at 168.

On appeal, the Second Circuit held that the district court erred in interpreting the "actual physical loss" liability provision to require, as a matter of law, that damages be measured by the plaintiff's cost of acquiring the goods at

the point of the shipment's origin in Shanghai.  Id.  The Second Circuit reasoned that "actual loss" liability provisions are often measured by market value at destination.  Id. at 168-69.  The Second Circuit further noted that measuring "actual physical loss" by the fair market value of the goods at destination did not render the Standard and Carmack provisions redundant because of differences between the terms of the two provisions other than those limiting liability.  Id. at 169.  Arrigoni relies on language in the Jessica Howard opinion indicating that damages under the Carmack Amendment are "generally . . . based on the fair market value of the goods."  Id. (quoting Project Hope v. M/V IBN SINA, 250 F.3d 67, 77 (2d Cir. 2001)).  However, the Second Circuit expressly acknowledged the "limited nature" of its ruling, clarifying that it "was holding only that the district court erred in determining that *on the basis of contract interpretation* [the plaintiff's] damages must, *as a matter of law,* be measured by the goods' acquisition costs in Shanghai."  Id. at 170-71.  The Second Circuit's holding did not, as Arrigoni attempts to argue, hold that consequential damages are unavailable under the Carmack Amendment.  In fact, the Second Circuit cited it's previous decision in Project Hope for the proposition that, "While it is true that damages under the Carmack Amendment should generally be based on the fair market value, we have held that *it need not be applied if circumstances suggest a more appropriate alternative*."  Id. at 171 (quoting Project Hope, 250 F.3d at 77) (emphasis added).  In Project Hope, the Second Circuit remanded a damages award under the Carmack Amendment to the district court on the basis that the

district court had not fully compensated the plaintiff for its actual loss.  250 F.3d at 78.  In so holding, the Second Circuit expressly noted that the total damages award included recovery for various "incidental damages."  Id. at 78 n.8.  However the Second Circuit did not find this award of incidental damages to be improper, and as noted above, on remand the district court upheld the award of incidental damages over the defendants' objection.  See Project Hope, 2001 WL 1875854 at *2-*3.  Therefore, the precedent cited by Arrigoni does not preclude an award of consequential damages in this matter.

      However, the Court concludes that the Plaintiff has failed to establish probable cause that it will recover attorney's fees in this case.  There is a split of authority regarding whether attorney's fees may be recovered under the Carmack Amendment.  See A..T. Clayton & Co., Inc. v. Missouri-Kansas-Texas R.R. Co., 901 F.2d 833, 835 n.1 (10th Cir. 1990).  Although the Second Circuit has not specifically ruled on this issue, district courts within this Circuit have found that attorney's fees are not available under the Carmack Amendment.  See, e.g., Fireman's Fund Ins. Co. v. Never Stop Trucking, Inc., No. 08-cv-3445, 2009 WL 3297780, at *3 (E.D.N.Y. Oct. 13, 2009) ("[T]he Carmack Amendment does not expressly provide for attorneys' fees and the Second Circuit has advised that 'where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.'") (quoting Cleveland v. Beltman North American Co., 30 F.3d 373, 380 (2d Cir. 1994)); Ford v. Allied Van Lines, Inc., No. Civ. 3:96CV2598, 1997 WL 317315, at *3 (D. Conn. June 3, 1997) ("[T]here is no

provision in § 14706 of the Carmack Amendment which authorizes the recovery of attorney's fees in an action by a shipper of goods against a common carrier for damage or loss to those goods."). At the hearing, the Plaintiff presented no evidence to support it's assertion that it's state law claims against Arrigoni, which would permit an award of attorney's fees, are not preempted by the Carmack Amendment. Furthermore, the Plaintiff cited no authority in it's briefs providing that attorney's fees are may be awarded under the Carmack Amendment under the law of this Circuit. Therefore, the Court declines to include the requested attorney's fees in the prejudgment remedy amount awarded.

     Finally, Arrigoni claims that a prejudgment remedy against him is unwarranted because he does not possess sufficient assets to dissipate. However, he cites no factual or legal authority in support of this proposition. Therefore, the Court finds that Arrigoni's alleged shortage of assets does not justify denial of the Plaintiff's motion for prejudgment remedy. As discussed above, the testimony and evidence submitted at the prejudgment remedy hearing establish probable cause that a judgment will be rendered against Arrigoni in this action in the amount of the damages sought by the Plaintiff. Arrigoni has articulated no reason why the Plaintiff should be required to bear the burden of it's loss resulting from Arrigoni's conduct in failing to stop driving when the vessel became dislodged from his vehicle and came into contact with the highway surface.

Accordingly, the Court holds that the Plaintiff is entitled to a prejudgment remedy in the amount of $728,726.72, representing the Plaintiff's alleged damages plus statutory interest at the rate of 10%.

### III.  Conclusion

Based on the above reasoning, and as counsel has appeared for and argued on behalf of the Defendant Arrigoni at a hearing held on October 16, 2009, the Plaintiff's motion for prejudgment remedy [Doc. #12] and motion for disclosure of property and assets [Doc. #16] are GRANTED as to Defendant Arrigoni.  The Court orders a prejudgment attachment and garnishment against Arrigoni in the amount of $728,726.72, with said attachment and garnishment to be issued with respect to Arrigoni's interest in any trucks, trailer and/or equipment and appurtenances at 49 Commerce Street, Clinton, Connecticut and, if not fully satisfied thereby, additional interests to be identified pursuant to the Plaintiff's motion for disclosure of assets.  Arrigoni shall respond to the motion for disclosure of assets by November 30, 2009.

IT IS SO ORDERED.

       /s/       
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  November 19, 2009.