**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **ENSIGN YACHTS, INC,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **3:09-cv-209 (VLB)** |
| **JON ARRIGONI ET AL.,** | : | |
| **Defendants.** | : | **March 11, 2010** |

**MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT**
**JON ARRIGONI'S MOTION TO DISMISS [Doc. #36] AND GRANTING IN PART**
**AND DENYING IN PART DEFENDANTS LLOYDS OF LONDON'S**
**AND SAPERSTEIN AGENCY'S MOTIONS TO DISMISS [Doc. ##32, 34]**

The Plaintiff, Ensign Yachts, Inc. ("Plaintiff" or "Ensign") brings this action

for damages against the Defendants, Jon Arrigoni ("Arrigoni"), Arrigoni's

underwriter Lloyds of London ("Lloyds"), and Lloyds' purported agent the

Saperstein Agency, Inc. ("Saperstein").  This case involves the transit of the

Plaintiff's 2008 55' Cigarette Super Yacht from New Jersey to Florida in December

2007.  The Plaintiff alleges that the vessel was damaged during transit while in the

custody of Arrigoni as a result of Arrigoni's negligence.  Ensign asserts claims

against three parties.  First, it asserts claims against Arrigoni for breach of

contract, violation of the Carmack Amendment to the Interstate Commerce Act (49

U.S.C. § 14706), breach of implied contract, negligence, breach of the covenant of

good faith and fair dealing, loss of sale, and breach of the Connecticut Unfair Trade

Practices Act ("CUTPA") (Conn. Gen. Stat. § 42-110b et seq.).  Second, Ensign

asserts claims against Saperstein for breach of contract, breach of the covenant of

good faith and fair dealing, bad faith, fraud, breach of the Connecticut Unfair

Insurance Practices Act ("CUIPA") (Conn. Gen. Stat. § 38a-815 et seq.), tortious

interference, breach of CUTPA, and loss of sale.  Finally, Ensign asserts claims against Lloyds for breach of contract, bad faith, breach of the covenant of good faith and fair dealing, fraud, breach of CUIPA, breach of CUTPA, and loss of sale.

Presently pending before the Court are three separate motions to dismiss filed by Arrigoni [Doc. #36], Lloyds [Doc. #34], and Saperstein [Doc. #32].  For the reasons stated below, Arrigoni's motion to dismiss is GRANTED.  Lloyds' and Saperstein's motions to dismiss are GRANTED IN PART and DENIED IN PART.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff's Amended Complaint alleges the following facts relevant to the pending motions to dismiss.  Ensign entered into various agreements with Cigarette Super Yachts, which led to a joint venture under the name Cigarette Racing Team ("Cigarette").  The purpose of the joint venture was to market and sell a 2008 Model Year, 55' Cigarette Super Yacht (the "Yacht").  Sometime thereafter, Cigarette assigned and/or transferred all of its rights in the Yacht to Ensign.  In October 2007, Ensign entered into a brokerage agreement with Xtreme Games Watersports ("Xtreme") for the purpose of selling the Yacht.  In December 2007, Masterski Pilou Agency ("Masterski"), a client of Xtreme, agreed to purchase the Yacht for a price of $1,200,000.

In furtherance of the sales agreement with Masterski, Ensign arranged for the Yacht to be transported from Jersey City, New Jersey to Miami, Florida.  Upon its arrival in Miami, Ensign planned to deliver the Yacht to Masterski in St. Barthelemy, French West Indies.  Ensign contacted Jon Arrigoni of Arrigoni Marine Movers to transport the Yacht.  Arrigoni indicated that he had the requisite skills

2

and experience to do the job.  Ensign advised Arrigoni that the fair market value of the Yacht was in excess of $1,000,000, and requested that Arrigoni obtain insurance to be issued in Ensign's name.  Arrigoni contacted Lloyds, which issued an insurance policy for the sum of $1,000,000.  Subsequently, Arrigoni acquired a Certificate of Liability Insurance from Saperstein identifying Cigarette as the certificate holder.

During transit by Arrigoni, the Yacht became dislodged from the trailer that Arrigoni was using to transport it and was dragged along the highway, causing substantial damage to the Yacht's hull and equipment and diminishing its value. Prior to September 15, 2008, Ensign advised the defendants, including Lloyds' agents Lloyds of America and Penobscot Group, of its claim for damages to the Yacht, as well as other potential losses related to the sale of the Yacht.  This was done so that the Yacht could be quickly repaired at the expense of Lloyds, as Ensign not have sufficient funds to pay for the initial repairs, estimated to cost $100,000, and so that Masterski would not cancel its agreement to purchase the Yacht.  Ensign contracted with Norseman Shipbuilding Corporation ("Norseman") to repair the Yacht.  Masterski nevertheless cancelled the purchase agreement. Norseman completed its repairs of the Yacht on April 3, 2008.  Defendants Lloyds and Saperstein and their agent Penobscot Group refused to deal with the public adjuster that Ensign had retained to speed along adjustment of the claim, and failed to contact Ensign to deal with it personally.  According to Ensign, Lloyds and Saperstein and their agents entirely refused to cooperate in the claims process and adjust the claim, and ultimately denied the claim without providing a reason for the

3

denial to Ensign.

Ensign alleges that Lloyds or its agent Lloyds of America employed Saperstein as their agent/broker for the purpose of soliciting insurance policies to be issued by Lloyds and to handle claims submitted by their insureds.  Ensign further alleges that Lloyds and Saperstein are not authorized to do business in Connecticut, but that they nonetheless conducted the business of insurance within Connecticut.  Specifically, Ensign claims that these Defendants issued a Certificate of Liability Insurance dated December 17, 2007, binding insurance covering Ensign, but they were not authorized to conduct the business of insurance in Connecticut or to solicit or sell policies of insurance to individuals or entities in Connecticut.  Ensign asserts that Lloyds and Saperstein knew or should have known that they were not authorized to engage in the business of insurance in Connecticut, and therefore they were in violation of Connecticut law when they issued insurance to Arrigoni and Ensign.

Because Ensign did not have sufficient funds to pay Norseman, and because Lloyds and Saperstein refused to adjust and pay Ensign's claim, on July 23, 2008, Norseman filed a complaint in the Federal District Court for the Southern District of Florida (Docket No. 08-22073) to have the Yacht arrested in order to protect and secure its maritime lien.  Ensign borrowed money to pay Norseman for its services, and the Yacht was released from arrest by Court Order on August 8, 2008.

After the Yacht was released from arrest, Ensign again marketed it for sale. However, the market for vessels of this type had deteriorated substantially and the Yacht suffered additional damages that further diminished its value.  The Yacht

4

was eventually sold in December 2008 for the sum of $750,000.

Ensign brought suit in this Court on February 4, 2009.  Ensign filed an Amended Complaint on March 16, 2009.  Saperstein filed its motion to dismiss for lack of jurisdiction and failure to state a claim on April 16, 2009.  Lloyds and Arrigoni separately filed motions to dismiss for failure to state a claim on April 17, 2009.  Ensign filed a joint objection to all three motions on June 11, 2009.  Following a prejudgment remedy hearing, by Order dated November 19, 2009, the Court granted a prejudgment remedy of attachment and garnishment against Arrigoni only in the amount of $728,726.72.  See Doc. #97.

## II.  DISCUSSION

### A.  Standard of Review

The Supreme Court clarified the standard governing a motion to dismiss for failure to state a claim in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), stating that, "[u]nder Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  Id. at 1949.  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

5

(internal citations omitted).

## B. Carmack Preemption

### 1. Arrigoni

Arrigoni moves to dismiss all state statutory and common law claims asserted against him on the basis that these claims are preempted by the Carmack Amendment because they arise from interstate transportation services.  "It is well established that the Carmack Amendment preempts state law claims arising from the shipment of goods in interstate commerce."[1]  Design X Mfg., Inc. v. ABF Freight Systems, Inc., 584 F. Supp. 2d 464, 467 (D. Conn. 2008).  As the Second Circuit has explained:

> In enacting [the Carmack Amendment], Congress intended to provide interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability.  The Carmack Amendment did this both by establishing a single uniform regime for recovery by shippers directly from [the] interstate common carrier in whose care their [items] are damaged, and by preempting [the] shipper's state and common law claims against a carrier for loss or damage to goods during shipment.

Project Hope v. M/V Ibn Sina, 250 F.3d 67, 74 n.6 (2d Cir. 2001) (internal citations

---

[1] The Carmack Amendment provides, in relevant part:  "A common carrier . . . subject to the jurisdiction of the Interstate Commerce Commission . . . shall issue a receipt or a bill of lading for property it receives for transportation . . . That carrier . . . and any other common carrier that delivers the property and is providing transportation or service subject to the jurisdiction of the Commission . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (1) the receiving carrier, (2) the delivering carrier, or (3) another carrier over whose line or route the property is transported in the United States."  49 U.S.C. § 14706(a)(1).  A "carrier" under the Carmack Amendment specifically includes a "motor carrier," which is defined as "a person providing motor vehicle transportation for compensation."  49 U.S.C. § 13102(3) and (14).

and quotation marks omitted); <u>see also</u> <u>Cleveland v. Beltman North American Co.,</u> <u>Inc.</u>, 30 F.3d 373, 374 (2d Cir. 1994) (holding that claims by a shipper for damage to goods in interstate commerce is an "area of interstate commerce law that has been fully occupied by Congress' passage of a statute delineating what remedies are available, leaving no room for additional state or federal common law causes of action").

Ensign argues that its state law claims against Arrigoni are not preempted because, in addition to entering an agreement with Arrigoni to transport the vessel, it also entered into a second agreement with Arrigoni to procure proper insurance by having Ensign named as an additional insured.  According to Ensign, its claims based upon Arrigoni's failure to procure the agreed-upon insurance coverage, failure to prosecute his rights against Lloyds and Saperstein, and failure to commence suit or file a third-party complaint against Lloyds and Saperstein in order to enforce the rights he agreed to obtain on behalf of Ensign are not preempted by the Carmack Amendment.

In making this argument, Ensign relies primarily upon the Seventh Circuit's decision in <u>Gordon v. United Van Lines, Inc.</u>, 130 F.3d 282 (7th Cir. 1997).  There, the Seventh Circuit held that "the Carmack Amendment does not preempt those state law claims that allege liability on a ground that is separate and distinct from the loss of, or the damage to, goods that were shipped in interstate commerce." <u>Id.</u> at 289.  The plaintiff in <u>Gordon</u> was an elderly woman in failing physical health.  <u>Id.</u> at 284.  Her vision and hearing were impaired, and she could no longer write due to arthritis.  <u>Id.</u>  The plaintiff contacted a United Van Lines agency in Florida for the

7

purpose of arranging delivery of some of her belongings to her new apartment in Chicago, and other of her belongings to her daughter's home.  Id.  She met with a United Van Lines agent, who was aware of her physical impairments, and she instructed him regarding delivery.  Id.  The agent never obtained the plaintiff's agreement regarding insurance against the loss of her possessions, and instead wrote in the bill of lading that the plaintiff released United from liability for loss or damage to the goods exceeding $1,000.  Id.  United never delivered any of the goods destined for her daughter's home.  Id.  Instead, the items were inadvertently discarded and incinerated.  Id. at 285.  Rather than acknowledging their error, for a period of several months United represented to the plaintiff and her daughter that the items were in their warehouse and would be safely delivered.  Id.

Based upon these facts, the Seventh Circuit reversed the district court's dismissal of the plaintiff's claim for intentional infliction of emotional distress, finding that this claim alleged a harm to the plaintiff that was independent from the loss or damage to her goods and therefore was not preempted by the Carmack Amendment.  Id. at 289.  However, the Seventh Circuit upheld the district court's dismissal of the plaintiff's claims for breach of contract, willful and wanton misconduct, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, and common law fraud.  The Seventh Circuit found that claims "relating to the making of the contract for carriage, and the measure of damages for such claims are so likely to be the loss or damage to the goods, that they are . . . preempted by the Carmack Amendment."  Id.  In addition, the Seventh Circuit found that claims asserting fraud in the claims handling process were also

8

preempted by the Carmack Amendment because "the claims process is directly related to the loss or damage to the goods that were shipped.  Indeed, people would not be involved in the process unless either loss or damage had occurred." Id. at 290.

Numerous district courts have reached the same conclusion as the Seventh Circuit in Gordon, holding that the Carmack Amendment preempts statutory and common law claims against carriers arising from the claims process, including claims of fraud relating to insurance coverage.  See, e.g., Design X Mfg., 584 F. Supp. 2d at 467 (holding that breach of contract, negligence, and CUTPA claims against carrier asserting damages to business or reputation were preempted by the Carmack Amendment because the alleged damages "flowed directly from the damage to the goods shipped in interstate commerce and the subsequent claims process"); Shabani v. Classic Design Servs., Inc., 2010 WL 446084, at *2 (C.D. Cal. Feb. 8, 2010) (acknowledging that "the preemptive effect of the Carmack Amendment applies equally to claims of fraud relating to insurance coverage, and holding that claim alleging that carrier "intentionally and fraudulently misrepresented" that it had procured insurance for damaged item was preempted); Nichols v. Mayflower Transit, LLC, 368 F. Supp. 2d 1104, 1108-09 (D. Nev. 2003) (dismissing claims asserting that carrier sold "insurance" and acted in bad faith when refusing to pay plaintiff's claim); Hanlon v. United Parcel Serv., 132 F. Supp. 2d 503, 505-06 (N.D. Tex. 2001) (holding that the Carmack Amendment preempted plaintiff's claims against carrier for deceit for fraudulent insurance fee collection, unauthorized operation as an insurance company, and violations of the Texas

9

Insurance Code).

Here, all of the state law claims that Ensign asserts against Arrigoni in its Amended Complaint seek to recover damages arising from the shipment of its Yacht in interstate commerce.  Although Ensign attempts to characterize these claims as alleging liability on a ground that is separate and distinct from the damage to its Yacht, the very authority it cites supports the dismissal of these claims.  Ensign complains that Arrigoni misrepresented that he had procured adequate insurance to cover the risks associated with the interstate transport of the Yacht.  Ensign further complains that Arrigoni failed to prosecute his rights against Lloyds and Saperstein, and failed to commence suit or file a third-party complaint against Lloyds and Saperstein in order to enforce the rights he agreed to obtain on behalf of Ensign.  However, claims against carriers for misrepresentations relating to insurance coverage and misrepresentations made in connection with the claims handling process are directly related to the damage to the shipped goods, and are therefore preempted by the Carmack Amendment.  See Gordon, 130 F.3d at 290; see also Rini v. United Van Lines, Inc., 104 F.3d 502, 506 (1st Cir. 1997) ("Preempted sate law claims . . . include all liability stemming from damage or loss of goods, liability stemming from the claims process, and liability related to the payment of claims.").  Accordingly, since the Carmack Amendment preempts each of Ensign's state statutory and common law claims against Arrigoni, these claims are dismissed.[2]

---

[2]  Ensign also suggests that dismissal of these claims is inappropriate because Arrigoni has not provided proof that he is a carrier within the meaning of

## 2.  Lloyds

Lloyds also argues that Ensign's state law claims against it are preempted by the Carmack Amendment.  Unlike Arrigoni, Lloyds is not alleged to be a Carmack carrier, but instead is an insurance company.  As discussed above, the purpose of the Carmack Amendment was "to provide interstate *carriers* with reasonable certainty and uniformity in assessing their risks and predicting their potential liability."  Project Hope, 250 F.3d at 74 n.6 (emphasis added); see also Missouri Pac. R. Co. v. Elmore and Stahl, 377 U.S. 134, 137 (1964) (stating that the Carmack Amendment "codifies the common-law rule that a carrier, *though not an absolute insurer*, is liable for damages to goods transported by it unless it can show that the damage was caused by '(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods'") (emphasis added).  Lloyds points to nothing in the text of the Carmack Amendment or the statute's legislative history which suggests that by its enactment Congress intended to preempt a shipper's state law claims against an insurance company which allegedly had assumed a direct contractual obligation to insure the risk of loss during transport of the shipper's goods.  Nor does Lloyds cite any cases establishing that a shipper's claims against an insurer of the carrier

---

the Carmack Amendment.  However, Ensign expressly admits that Arrigoni is a carrier, alleging in its Amended Complaint that "Arrigoni was at all material times engaged in the business of a motor carrier and was a receiving, delivering, transporting, and/or other carrier within the meaning of the Carmack Amendment."  Am. Compl. ¶ 51.  Indeed, Ensign expressly rests its assertion of this Court's subject matter jurisdiction on Arrigoni's status as a carrier under the Carmack Amendment.  Id. ¶ 1.  Ensign cannot defeat Arrigoni's motion to dismiss by contradicting express allegations made in its Amended Complaint.

11

are preempted by the Carmack Amendment where that insurer allegedly assumed a direct contractual obligation to the shipper.

Indeed, other district courts have held that, because the Carmack Amendment is concerned predominately with the liability of carriers, it does not preempt actions against non-carrier entities arising out of the interstate shipment of goods.  See Commercial Union Ins. Co. v. Forward Air, Inc., 50 F. Supp. 2d 255, 257-59 (S.D.N.Y. 1999) (holding that a property broker, which arranged for shipping but did not act as a carrier, could be held liable under state or federal common law given the existence of a savings clause in the Carmack Amendment and the focus of precedent on carrier liability); Taylor v. Allied Van Lines, No. CV-08-1218-PHX-GMS, 2008 WL 5225809, at *3-*4 (D. Ariz. Dec. 15, 2008) (holding that "the Carmack Amendment was not intended to preempt all actions against non-carrier entities arising out of the interstate shipment of goods simply because a statutory cause of action is also available against the carrier"); Custom Cartage, Inc. v. Motorola, Inc., No. 98-C-5182, 1999 WL 89653, at *3 (N.D. Ill. Feb. 16, 1999) (stating that the Carmack Amendment's silence as to the liability of non-carrier entities "does not mean that the Carmack Amendment grants entities which arrange for the transportation of goods absolute immunity for breach of contract or tort actions arising out of the interstate shipment of goods").

Further, because Ensign asserts CUIPA claims against Lloyds and Saperstein, a holding that the Carmack Amendment preempts all of Ensign's state law claims against these Defendants would arguably run afoul of the McCarran-Ferguson Act, which provides that "[n]o Act of Congress shall be construed to

12

invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance."  15 U.S.C. § 1012(b); <u>see generally</u> *Couch on Insurance* 3d § 2:4.  Accordingly, the Court holds that Ensign's state law claims against Lloyds are not preempted by the Carmack Amendment.[3]

### C.  <u>Subject Matter Jurisdiction</u>

Saperstein first argues that all of Ensign's claims against it must be dismissed for lack of subject matter jurisdiction.  According to Saperstein, the Court lacks subject matter jurisdiction over Ensign's claims against it because both Ensign and Saperstein are incorporated in New York, and therefore there is a lack of complete diversity of citizenship pursuant to 28 U.S.C. § 1332(a).  The Court first notes that complete diversity exists under § 1332 only where all plaintiffs are citizens of different states than all defendants.  See <u>Exxon Mobil Corp. v. Allapattah Services, Inc.</u>, 545 U.S. 546, 553 (2005) (citing <u>Strawbridge v. Curtiss</u>, 3 Cranch 267, 2 L.Ed. 435 (1806)).

Here, the Amended Complaint invokes the Court's jurisdiction on multiple grounds.  Although Saperstein correctly contends that "diversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships," <u>Herrick Co., Inc. v. SCS Communications, Inc.</u>, 251 F.3d 315, 322 (2d Cir. 2001), the lack of complete diversity in this case would not end the Court's

---

[3]  **Saperstein does not assert a Carmack preemption defense. Nevertheless, the Court notes that the foregoing analysis applies equally to Saperstein.**

inquiry, nor need the Court address the diversity argument because Ensign asserts alternative bases for jurisdiction.  A federal court's jurisdiction is not limited only to cases in which there is diversity of citizenship.  As a general matter, the term "jurisdiction" means those cases falling within the Court's adjudicative authority. See Kontrick v. Ryan, 540 U.S. 443, 455 (2004).  Federal courts are tribunals of limited jurisdiction whose adjudicative authority is limited to cases the adjudication of which is authorized by the Constitution and Congress.  See Kokkoken v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994); Finley v. United States, 490 U.S. 545, 547-58 (1989).  Federal courts are presumptively without jurisdiction and the burden of proving that the Court has jurisdiction is on the party seeking to invoke the Court's jurisdiction.  Kokkoken, 511 U.S. at 377. Congress has conferred jurisdiction upon federal district courts pursuant to 28 U.S.C. § 1330 et seq.  Section 1331 confers district courts with general federal question jurisdiction, which includes jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; U.S. Const., art. III, §2.

The Amended Complaint asserts that this Court has federal question jurisdiction over Ensign's Carmack claim under 28 U.S.C. § 1331, and supplemental jurisdiction over its state law claims pursuant to 28 U.S.C. § 1367.  Federal question jurisdiction is invoked through Ensign's Carmack Amendment claim brought under 49 U.S.C. § 14706.  Respecting supplemental jurisdiction, § 1367(a) states:

Except as provided in subsections (b) and (c) or as expressly provided

14

otherwise by Federal Statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Thus, even when no independent basis for federal jurisdiction exists, a district court may exercise subject matter jurisdiction over state law claims when those claims are part of the same "case or controversy" that includes a federal claim.  The Second Circuit has held that "disputes are part of the same case or controversy within § 1367 when they derive from a common nucleus of operative fact."  Achtman v. Kirby McInerney & Squire, LLP, 464 F.3d 328, 335 (2d Cir. 2006) (internal quotation marks omitted).  To determine whether claims arise from a "common nucleus of operative fact," the appropriate inquiry is whether " the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court."  Id.  "This is so even if the state law claim is asserted against a party different from the one named in the federal claim."  Id.

Here, it is clear that Ensign's claims against Saperstein, and all of its state law claims for that matter, arise from the same nucleus of operative fact as the Carmack claim against Arrigoni.  The Carmack claim involves the interstate transport of Ensign's Yacht and the damage to the Yacht that resulted during that transport.  Each of Ensign's state law claims directly relate to the transport of or damage to the Yacht in that they allege either wrongs related to the procurement of insurance for transport of the Yacht, or defects in the claims handling process

15

after the Yacht was damaged.

A court has subject matter jurisdiction over state law claims arising from the same nucleus of operative fact as the plaintiff's federal claim unless that jurisdiction is limited by 28 U.S.C. § 1367(b).  Section 1367(b) provides that "where district courts have original jurisdiction founded solely on [diversity jurisdiction under] section 1332 of this title, the district courts shall not have supplemental jurisdiction . . . over claims by plaintiffs . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332."  Saperstein argues that § 1367(b) deprives this Court of jurisdiction over Ensign's state law claims against it.

Contrary to Saperstein's argument, § 1367(b) is clearly inapplicable in this case.  By its terms, § 1367(b) limits a district court's exercise of supplemental jurisdiction only in cases that invoke nothing but diversity jurisdiction.  The present case invokes the Court's federal question jurisdiction.  See 13B Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3567.2 ("Thus, § 1367(b) does not apply in cases that invoke federal jurisdiction on any non-diversity basis, such as federal question jurisdiction.  In a case invoking a non-diversity basis of jurisdiction, if supplemental jurisdiction is granted by § 1367(a), there is no § 1367(b) analysis whatever."); see also Rotter v. Leahy, 93 F. Supp. 2d 487, 497 n.3 (S.D.N.Y. 2000) ("Section 1367(b) does not apply in this case, since jurisdiction is not predicated solely on diversity, but also on federal question (§ 1331) jurisdiction."); Estate of Bruce v. City of Middletown, 781 F. Supp. 1013, 1017 n.2 (S.D.N.Y. 1992) ("Since federal question jurisdiction in this case does not rest

16

upon diversity but a federal claim under § 1983, the exceptions to supplemental jurisdiction incorporated within § 1367(b) do not apply.").  Accordingly, because Ensign invokes the Court's federal question and concomitant supplemental jurisdiction under the Carmack Amendment, a federal statute, § 1367(b) is irrelevant and Saperstein's argument for dismissal on the basis of § 1367(b) is meritless.

### D.  Breach of Contract

Ensign asserts breach of contract claims against Lloyds and Saperstein. The purported factual basis for these claims is that Ensign and/or its predecessor Cigarette requested that Arrigoni obtain insurance to cover transport of the Yacht to be issued in the name of Ensign and/or Cigarette.  According to Ensign, Arrigoni acquired, through Saperstein, a Certificate of Liability Insurance (the "Certificate") which named Cigarette as the Certificate holder.  Lloyds allegedly issued Policy Nos. R704230/112 and R704390/0010 in favor of Cigarette to insure against any losses during the loading, transit, and discharge of the Yacht.  See Am. Compl. ¶¶ 18-20.

Although the parties do not make a choice-of-law argument, Ensign relies upon New York law in its opposition to support its breach of contract claims, while Lloyds and Saperstein cite Connecticut law in their motions to dismiss.  Therefore, the Court will briefly address choice-of-law principles.  In a federal question action where a district court's subject matter jurisdiction over non-federal claims is based on supplemental jurisdiction, the district court applies the choice-of-law rules of the forum state, which is Connecticut in this case.  See Rogers v. Grimaldi, 875

17

F.2d 994, 1002 (2d Cir. 1989).  The Connecticut Supreme Court has adopted the approach for analyzing choice-of-law issues enunciated in the *Restatement (Second) of Conflict of Law*, § 188, pursuant to which the law of the state that has the "most significant relationship" to the transaction and parties at issue is applied in contract cases.  <u>See</u> <u>Reichold Chemicals, Inc. v. Hartford Accident & Indemnity Co.</u>, 243 Conn. 401, 413-14 (2000).  Based upon the allegations in the Amended Complaint, it is clear that Connecticut has the most significant relationship to the transaction and parties at issue in this case.  Arrigoni's place of business is located in Connecticut, and he negotiated insurance coverage for transport of the Yacht with Saperstein, which is incorporated in New York but also transacts business in Connecticut.  Ensign is incorporated in New York as well, but its offices are located in Connecticut.  Thus, the insurance contract at issue was negotiated in Connecticut by a Connecticut resident, and covered the interstate transport of the Yacht by a Connecticut resident for a business whose offices are located in Connecticut.  Accordingly, choice-of-law principles dictate that this Court apply Connecticut law to Ensign's claims.

Under Connecticut law, "[t]he elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages."  <u>Rosato v. Mascardo</u>, 82 Conn. App. 396, 411 (2004) (citations and quotation marks omitted).  Lloyds and Saperstein argue that Ensign cannot satisfy any of these elements because it had no contract with them.  In making this argument, they rely upon the Certificate, attached to Ensign's original complaint as Exhibit 1, which expressly provides:

18

**THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER.  THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.[4]**

Only Arrigoni is listed as an insured on the Certificate.  Based upon this fact in conjunction with the above-quoted language, it is clear that the Certificate itself does not constitute a contract between Ensign and Lloyds/Saperstein.

However, Ensign argues in response that it was a third party beneficiary of the insurance agreement between Arrigoni and Lloyds/Saperstein.  "A third party beneficiary may enforce a contractual obligation without being in privity with the actual parties to the contract.  Therefore, a third party beneficiary who is not a named obligee in a given contract may sue the obligor for breach."  Gateway Co. v. DiNoia, 232 Conn. 223, 230-31 (1995) (internal citation omitted).  Thus, the essential question in this case is whether Ensign was a third party beneficiary.

The Connecticut Supreme Court has explained that "the ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the [mutual] intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making . . ."  Pelletier v. Sordoni/Skanska Construction Co., 264 Conn. 509, 531 (2003) (quoting Grigerik v. Sharpe, 247 Conn. 293, 311-12 (1998)).  "Although it is not in all instances necessary that there be

---

[4]  **The Court may properly consider exhibits attached to a complaint in deciding a motion to dismiss.  See Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).**

express language in the contract creating a direct obligation to the claimed third party beneficiary . . . the only way a contract could create a direct obligation between a promisor and a third party beneficiary would have to be . . . because the parties to the contract so intended."  Gazo v. City of Stamford, 255 Conn. 245, 261 (2001).  "The mere fact that a contract of liability insurance exists between the tortfeasor and insurance company does not somehow make the injured party a third-party beneficiary to the contract."  Alexander v. W.F. Shuck Petroleum Co., No. HHBCV085010050, 2009 WL 2783587, at *4 (Conn. Super. Ct. Aug. 3, 2009).

The Court finds that Ensign has sufficiently pleaded a third party beneficiary cause of action for breach of contract against Lloyds and Saperstein.  Ensign alleges that Arrigoni acquired, through Saperstein, two insurance policies issued by Lloyds to cover the risk of loss during transport of the Yacht.  Although Ensign was not named as an insured on the Certificate, Ensign claims that it was an intended beneficiary of the policies.  Lloyds and Saperstein argue that Ensign's claim is contradicted by the Certificate, which expressly states that it confers no rights upon Cigarette as the Certificate holder.  However, this is not dispositive at the motion to dismiss stage, because the test for determining whether Ensign is a third party beneficiary of the agreement between Arrigoni and Lloyds/Saperstein requires the Court to discern the intent of these parties based upon the terms of the insurance policies themselves read in light of the circumstances attending their making.  See Pelletier, 264 Conn. at 531.  Since the policies have not been attached to the pleadings, the Court has not yet had the opportunity to review the policies and determine, based upon their terms read in the light of the

20

circumstances attending their making, whether Arrigoni and Lloyds/Saperstein intended that Lloyds/Saperstein would assume a direct obligation to Ensign.  See Rapaport and Benedict, P.C. v. City of Stamford, 39 Conn. App. 492, 498 (1995) (observing that "ordinarily the question of contractual intent presents a question of fact for the ultimate fact finder").  Accordingly, dismissal of Ensign's breach of contract claims at this stage would be premature.

Saperstein makes the additional argument that, under the law of agency, it cannot be held liable for the contracts of a disclosed principal, namely Lloyds. Under Connecticut law, an "agent is not liable where, acting within the scope of his authority, he contracts with a third party for a known principal."  Schribner v. O'Brien, Inc., 169 Conn. 389, 405 (1975); see also Behlman v. Universal Travel Agency, Inc., 4 Conn. App. 688, 690 (1985) ("An agent, by making a contract only on behalf of a competent disclosed principal whom he has the power to bind, does not thereby become liable for its nonperformance.") (citing Restatement (Second) Agency, § 328).  "To avoid personal liability, it is the duty of the agent to disclose both the fact that he is acting in a representative capacity and the identity of his principal."  Behlman, 4 Conn. App. at 690.  While it appears from the pleadings that Saperstein acted at least in part on behalf of Lloyds, Ensign also alleges that Saperstein was acting as a broker for the purpose of insuring Ensign and that Saperstein itself made misrepresentations related to insurance coverage for transport of the Yacht.  See Restatement (Second) Agency, § 388 comment b (noting that, if an agent misrepresents "circumstances affecting the probability of performance [of a contract], the failure of the principal to perform may subject [the

21

agent] to liability for damages so caused").  Therefore, the Court will not dismiss Ensign's breach of contract claim against Saperstein on the basis of agency law.

### E.   Breach of the Covenant of Good Faith and Fair Dealing

Ensign alleges that Lloyds and Saperstein breached the covenant of good faith and fair dealing by refusing to timely and properly adjust or process Ensign's claim for damages sustained to its Yacht.

The requirements for pleading a breach of the covenant of good faith and fair dealing under Connecticut law are well-established.  "[E]very contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement . . .  The covenant of good faith and fair dealing presupposes that the terms and purpose of the contract are agreed upon by the parties and that what is in dispute is a party's discretionary application or interpretation of a contract term . . .  To constitute a breach of [the implied covenant of good faith and fair dealing], the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith."  Renaissance Management Co., Inc. v. Connecticut Housing Finance Authority, 281 Conn. 227, 240 (2007).  "[T]he existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing." Macomber v. Travelers Property and Casualty Corp., 261 Conn. 620, 638 (2002).

As the Connecticut Supreme Court has explained, "[g]ood faith and fair dealing means an attitude or state of mind denoting honesty of purpose, freedom from intention to defraud and generally speaking means faithful[ness] to one's

22

duty or obligation . . .  [B]ad faith is defined as the opposite of good faith, generally

implying a design to mislead or to deceive another, or a neglect or refusal to fulfill

some duty or some contractual obligation not prompted by an honest mistake as to

one's rights or duties . . .  [B]ad faith is not simply bad judgment or negligence, but

rather it implies the conscious doing of a wrong because of dishonest purpose or

moral obliquity[;]  . . . it contemplates a state of mind affirmatively operating with

furtive design or ill will." Buckman v. People Express, Inc., 205 Conn. 166, 171

(1987).

Lloyds and Saperstein first argue that Ensign's claims for breach of the

covenant of good faith and fair dealing must be dismissed because they had no

contract with Ensign, which is a prerequisite to such a claim.  However, as

discussed above, Ensign has alleged that it is a third party beneficiary of Arrigoni's

insurance policies with Lloyds/Saperstein.  If a plaintiff adequately pleads third

party beneficiary status under a contract, it may assert a claim for breach of the

covenant of good faith and fair dealing.  See, e.g., 701 Main Street, LLC v. RLS

Design Build LLC, No. FBTCV085016969S, 2008 WL 5220689, at *2 (Conn. Super. Ct.

Nov. 20, 2008) ("So long as a plaintiff has adequately alleged third party beneficiary

status under the . . . contract [the] breach of implied covenant of good faith and fair

dealing . . . [claim is] legally sufficient.") (citation omitted; internal quotation marks

omitted); DiNuzzo v. Bute, No. CV020469411S, 2004 WL 2943293, at *2 (Nov. 15,

2004) ("[C]onstruing the plaintiff to be a third-party beneficiary of the . . . insurance

contract provides . . . the contractual basis for the alleged breach of the covenant

of good faith and fair dealing[.]").[5]

Saperstein further argues that Ensign's Amended Complaint fails to plead facts supporting its claim that Saperstein's actions were taken in bad faith.  While Connecticut appellate courts have not addressed what allegations are required to plead bad faith in cases where an insurer denies coverage under an insurance policy, a majority of Superior Court cases have held that the plaintiff "must plead facts that go beyond a simple breach of contract claim and enter into a realm of tortious conduct which is motivated by a dishonest or sinister purpose."  Agency on Aging for South Central Connecticut v. Executive Risk Specialty Insurance, No. CV095027399, 2009 WL 5698248, at *4 (Conn. Super. Ct. Dec. 21, 2009).  Thus, the plaintiff must plead additional factual allegations beyond the facts supporting a breach of contract claim in order to state a claim for breach of the covenant of good faith and fair dealing.  See id. at *5.

Here, Ensign alleges that Lloyds and Saperstein refused to process Ensign's claim and denied the claim without providing any reason for the denial, which is essentially the basis of Ensign's breach of contract claims.  However, Ensign further alleges that Lloyds and Saperstein were not properly licensed to conduct

---

[5]  Lloyds also argues that Ensign's claim that Lloyds was not properly licensed in Connecticut is patently untrue, because, at all times relevant to this case, Lloyds was duly listed as an insurer in the records of Connecticut's Insurance Department.  See Lloyds' Motion to Dismiss, Ex. A.  However, the records attached by Lloyds are effective as of January 13, 2009.  Lloyds does not attach records demonstrating that it was licensed in Connecticut during the time of the events giving rise to this action.  Since the Court must accept the allegations in Ensign's Amended Complaint as true for purposes of a motion to dismiss, the Court cannot dismiss Ensign's claims on this basis.

the business of insurance in Connecticut, and that they intentionally concealed this fact from Ensign.  These additional allegations amount to more than a mere denial of the claim.  If proven true, they may support an inference that Lloyds and Saperstein were motivated by a dishonest purpose to conceal the fact that they were issuing insurance policies in Connecticut without obtaining the proper licenses.  See e.g., Bates v. Utica Mutual Insurance Co., No. CV020088925S, 2003 WL 21327656, at *2 (Conn. Super. Ct. May 29, 2003) (denying motion to strike breach of the covenant of good faith and fair dealing claim where plaintiff alleged that insurance company refused to issue voluntary agreements and failed to make payments after acknowledging in writing that plaintiff's claims were compensable and agreeing at a hearing to make the payments).  Therefore, the Court will not dismiss Ensign's claims against Lloyds and Saperstein for breach of the covenant of good faith and fair dealing.

### F.  Bad Faith

Ensign also asserts bad faith claims against Lloyds and Saperstein.  In support of these claims, Ensign alleges that Lloyds and Saperstein intentionally concealed from Ensign that they were not duly authorized to conduct the business of insurance in Connecticut and that they would not honor claims presented under the insurance policies obtained by Arrigoni to cover transport of the Yacht.

As an initial matter, the Court notes that Ensign's bad faith claims are similar, but distinct from, its claims alleging breach of the covenant of good faith and fair dealing.  See Michalek v. Allstate Ins. Co., No. CV075008280, 2008 WL 283945, at *4 (Conn. Super. Ct. Jan. 18, 2008).  As discussed above, bad faith "is a

25

necessary, but insufficient condition for a breach of the covenant of good faith and fair dealing." Id. Bad faith is also separately recognized as a tort claim in Connecticut. See Bergen v. Standard Fire Ins. Co., No. CV 93044099S, 1997 WL 809957, at *15 (Conn. Super. Ct. Dec. 31, 1997).

Where, as here, the plaintiff alleges unreasonable withholding of payment on an insurance policy, in order to prove bad faith the plaintiff must show "a reckless indifference to the rights of the insured[;] egregious conduct is required." Id. "[A] finding of bad faith cannot be based on a simple breach of contract." Id. Instead, the plaintiff "must show that there is no reasonable basis to have denied the claim and that the insurer knew this to be the case[.]" Id. The reason for this requirement is that insurers "have the right to fairly dispute a claim made under the policy." Id.

Here, Ensign alleges that Lloyds and Saperstein refused to process Ensign's claim and denied the claim without providing any reason for the denial. Ensign further alleges that Lloyds and Saperstein were not licensed insurance companies in Connecticut, and that they intentionally concealed this fact from Ensign. If proven, these allegations may support an inference that Lloyds and Saperstein denied Ensign's claim because they were not authorized to conduct the business of insurance in Connecticut, and not because they had a reasonable basis for denying Ensign's claim under the policies. While Lloyds and Saperstein may well have had a reasonable basis for denying Ensign's claim, the pleadings do not contain any facts elucidating the reason for the denial, and therefore Ensign's bad faith claims must survive the motions to dismiss.

26

## G.  Fraud

Ensign next asserts fraud claims against Lloyds and Saperstein, alleging that these Defendants fraudulently concealed from Ensign that they were not properly licensed to conduct the business of insurance in Connecticut and that they would not honor insurance claims presented to them.  Lloyds and Saperstein move to dismiss these claims on the basis that Ensign has failed to plead fraud with particularity as required by Fed. R. Civ. P. 9.

The elements of a cause of action for fraud are:  "(1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the party relied on the statement to his detriment."  Muller v. Muller, 43 Conn. App. 327, 337-38 (1996).  "Usually, mere nondisclosure does not amount to fraud . . .  Nondisclosure may, however, amount to fraud when there is a failure to disclose known facts under circumstances that impose a duty to speak . . ."  Dockter v. Slowik, 91 Conn. App. 448, 458 (2005).

Pursuant to Fed. R. Civ. P. 9(b), "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  "To satisfy this requirement, a plaintiff should specify the time, place, speaker, and content of the alleged misrepresentations.  In addition, the complaint should explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."  Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001) (citations omitted).

27

The Court concludes that Ensign has failed to plead fraud with the particularity required by Fed. R. Civ. P. 9(b).  Ensign merely alleges in conclusory fashion that Lloyds and Saperstein fraudulently concealed from Ensign the fact that they were not properly licensed to conduct the business of insurance in Connecticut and that they would not honor insurance claims presented to them. The Amended Complaint fails to specify the time, place, speaker and content of any alleged misrepresentations made by Lloyds or Saperstein, and neglects to explain how the alleged misrepresentations were fraudulent.  Nor does the Amended Complaint allege a single specific instance in which Lloyds or Saperstein had a duty to disclose any information to Ensign, but failed to do so.  Ensign's opposition to the motions to dismiss is similarly devoid of any explanation as to how it has satisfied the requirements of Fed. R. Civ. P. 9(b).  Consequently, Ensign's fraud claims against Lloyds and Saperstein are dismissed.  See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004) (dismissing fraud claim because plaintiff's complaint lacked "particularized facts to support the inference that the defendants acted recklessly or with fraudulent intent," and explaining that "conclusory allegations do not satisfy Rule 9(b)").

## H.  CUIPA and CUTPA

Ensign also asserts claims against Lloyds and Saperstein for breach of CUIPA and CUTPA.  With respect to the CUIPA claims, Lloyds and Saperstein correctly argue that CUIPA does not provide a private right of action.  See Lander v. Hartford Life & Ann. Ins. Co., 251 F.3d 101, 118 (2d Cir. 2001) ("Although not yet

28

conclusively decided by the Connecticut Supreme Court, most federal and Connecticut state courts have determined that [CUIPA] does not provide a private right of action.").  However, the Connecticut Supreme Court has recognized "the existence of a private cause of action under CUTPA to enforce alleged CUIPA violations," a so-called "CUIPA through CUTPA" claim.  <u>See</u> <u>Mead v. Burns</u>, 199 Conn. 651, 662-63 (1986).

Ensign alleges that Lloyds and Saperstein violated two sections of CUIPA. First, Ensign claims that Lloyds and Saperstein violated Conn. Gen. Stat. § 38a-816(1), which prohibits "misrepresentations and false advertising of insurance policies."  In order to succeed on a "CUIPA through CUTPA" claim under this section, "the plaintiff must allege and prove the four established elements of a negligent misrepresentation claim:  (1) the defendant made a misrepresentation of fact; (2) which the defendant knew or should have known was untrue; (3) the plaintiff reasonably relied on the misrepresentation; and (4) the plaintiff suffered pecuniary harm as a result of the misrepresentation."  <u>See</u> <u>Active Ventilation Products, Inc. v. Property & Casualty Ins. Co. of Hartford</u>, No. X09CV085023757, 2009 WL 2506360, at *2 (Conn. Super. Ct. July 15, 2009).

Second, Ensign claims that Lloyds and Saperstein violated Conn. Gen. Stat. § 38a-816(6), which prohibits "unfair claim settlement practices" that are performed "with such frequency as to indicate a general business practice[.]"  In order to establish a "CUIPA through CUTPA" claim under this section, the plaintiff must show "more than a single act of insurance misconduct."  <u>Mead</u>, 199 Conn. at 659. "[A] CUTPA claim based on an alleged unfair claim settlement practice prohibited

29

by § 38a-816(6) require[s] proof, as under CUIPA, that the unfair settlement practice

ha[s] been committed or performed by the defendant with such frequency as to

indicate a general business practice."  Lees v. Middlesex Ins. Co., 229 Conn. 842,

850 (1994) (internal quotation marks omitted).  "In requiring proof that the insurer

has engaged in unfair claim settlement practices 'with such frequency as to

indicate a general business practice,' the legislature has manifested a clear intent

to exempt from coverage under CUIPA isolated instances of insurer misconduct."

Id. at 849.

Lloyds argues that a "CUIPA through CUTPA" claim cannot be brought by

"third parties" to an insurance contract such as Ensign.  However, Ensign alleges

that it is a third party *beneficiary* to the insurance agreement between Arrigoni and

Lloyds/Saperstein, not merely a third party claimant.  As discussed above, "[a] third

party beneficiary may enforce a contractual obligation without being in privity with

the actual parties to the contract."  Gateway, 232 Conn. at 230-31.  This is because

both parties to the contract intended that the promisor "would assume a direct

obligation to the third party [beneficiary]."  Pelletier, 264 Conn. At 531.  In addition,

the promisor owes a duty of good faith and fair dealing to a third party beneficiary.

See DiNuzzo, 2004 WL 2943293, at *2.  Where, as here, it is plausibly alleged that the

plaintiff is a third party beneficiary to an insurance contract and thus that the

insurer has assumed a direct obligation to the plaintiff, the Court believes that the

plaintiff should be able to assert a CUIPA through CUTPA claim against the insurer

for unfair settlement practices.  See, e.g., Cirrito v. Crawford & Co., No.

CV010456052S, 2002 WL 31939119, at *6-*7 (Conn. Super. Ct. Dec. 24, 2002)

30

(denying motion to strike CUIPA through CUTPA claim brought by third-party

beneficiary to insurance contract).  The Connecticut Appellate Court case cited by

Lloyds, Carford v. Empire Fire and Marine Ins. Co., 94 Conn. App. 41 (2005), is

inapposite because the plaintiff in that case was not a third party beneficiary of the

insurance contract at issue.  See id. at 52 (holding that plaintiff injured in an

automobile accident could not assert CUIPA through CUTPA claim against insurer

of other driver absent subrogation or a judicial determination in plaintiff's favor

against the insured).

Saperstein presents three additional reasons why Ensign's CUIPA and

CUTPA claims should be dismissed:  first, the claims simply assert "professional

negligence;" second, Ensign fails to plead facts sufficient to demonstrate corrupt,

immoral and/or unscrupulous behavior on the part of Saperstein; and third, Ensign

has not pleaded that the unfair claim settlement practices alleged rise to the level of

a general business practice.

The Court is unpersuaded by Saperstein's first two arguments.  Ensign

alleges that Lloyds and Saperstein engaged in misrepresentation under Conn. Gen.

Stat. § 38a-816(1) by "misrepresenting the benefits, advantages, conditions and

terms of the policy."  Ensign further alleges that Lloyds and Saperstein conducted

unfair settlement practices in violation of Conn. Gen. Stat. § 38a-816(6) by, inter

alia,"misrepresenting coverage provisions in the policy;" "failing to acknowledge

and act with reasonable promptness upon [Ensign's] claims under the policy and

failing to pay [Ensign's] claim promptly;" "failing to adopt and implement

reasonable standards for the prompt investigation of" Ensign's claim; "refusing to

31

pay [Ensign's] claim promptly;" "failing to affirm or deny coverage of [Ensign's]

claim within a reasonable time after proof of loss" was provided; "failing to

effectuate a prompt, fair and equitable settlement of [Ensign's] claim in good faith;"

"forcing [Ensign] to institute litigation to recover amounts due under the policy by

failing to offer compensation;" "misrepresenting that they were authorized to issue

insurance policies to entities in Connecticut and/or in any jurisdiction;" and

"instructing defendant Arrigoni not to cooperate and/or assist in the submission

and adjustment of [Ensign's] claim."  Am. Compl. ¶¶ 92, 102.  The factual allegations

in the Amended Complaint suggest that Lloyds and Saperstein falsely represented

to Ensign that it was sufficiently insured for the risk of damage to the Yacht during

transport by Arrigoni, and that these Defendants subsequently stonewalled Ensign

when it submitted its claim by refusing to deal with the public adjuster it had

retained and denying its claim without providing any reason for the denial.  If

proven true, these allegations would rise beyond the level of "professional

negligence," and could in fact constitute a violation of CUIPA.[6]

---

[6]  **Conn. Gen. Stat. § 38a-816(1) prohibits "misrepresentations and false advertising of insurance policies," including, *inter alia*, misrepresentations regarding "the benefits, advantages, conditions or terms of any insurance policy[.]"  Conn. Gen. Stat. § 38a-816(6) prohibits "unfair claim settlement practices," including, *inter alia*, "misrepresenting pertinent facts or insurance policy provisions relating to coverages at issues;" "failing to acknowledge and act with reasonable promptness upon communications with respect to claims arising under insurance policies;" "failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;" "refusing to pay claims without conducting a reasonable investigation based upon all available information;" "not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;" and "compelling insureds to institute litigation to recover amounts due under an insurance policy."**

With respect to Saperstein's third argument, the Court notes as an initial matter that this argument applies only to Ensign's claims for unfair settlement practices under Conn. Gen. Stat. § 38a-816(6), which require proof that the unfair settlement practices alleged were committed with "such frequency as to indicate an a general business practice."  Conn. Gen. Stat. § 38a-816(6); see also Lees, 229 Conn. at 850.  This argument does not apply to Ensign's claims for misrepresentation of insurance policies under Conn. Gen. Stat. § 38a-816(1), which do not require a showing that the misrepresentations alleged rose to the level of a general business practice.

Ensign has alleged that the above-described unfair claim settlement practices were committed by Lloyds and Saperstein as part of their general business practice in that they sold similar or identical insurance policies to other Connecticut residents with the intention of avoiding coverage on similar grounds. See Am. Compl. ¶¶ 93, 103.  However, the Amended Complaint asserts facts relating only to Ensign's insurance claim against Lloyds and Saperstein, and does not identify any other specific instances in which these Defendants purportedly engaged in violations of CUIPA or any other claimants who suffered from similar unfair claim settlement practices.

The Court recognizes that there is a split among Connecticut Superior Courts on the issue of whether an allegation that a complained-of practice constitutes an insurer's "general business practice," without specific examples of other instances in which the insurer has engaged in the same practice, is sufficient to state a cause of action for violation of § 38a-816(6).  See Active Ventilation, 2009 WL 2506360, at

*3-*4.  Given the remedial nature of CUTPA and CUIPA, the Court would be inclined to agree with those courts which have held that the allegation of a general business practice, unsupported by specific instances of insurer misconduct in other cases, is sufficient to withstand a motion to dismiss.  However, the applicable pleading standard for this forum requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id.  Thus, under the Iqbal pleading standard, a mere assertion of a general business practice without anything more is insufficient to sustain Ensign's "CUIPA through CUTPA" claims against Lloyds and Saperstein for violation of Conn. Gen. Stat. § 38a-816(6).  Accordingly, the Court dismisses these claims. Ensign's "CUIPA through CUTPA" claims against Lloyds and Saperstein for misrepresentation under Conn. Gen. Stat. § 38a-816(1) shall go forward, as Ensign has pleaded facts sufficient to state a cause of action for negligent misrepresentation.[7]  See Active Ventilation, 2009 WL 2506360, at *2 (explaining that a plaintiff must plead and prove the elements of a negligent misrepresentation claim to succeed on a cause of action under § 38a-816(1)).

---

[7]  The Court notes that the heightened pleading standard set forth in Fed. R. Civ. P. 9(b) does not apply to claims for negligent misrepresentation under Connecticut law.  See DeNuzzo v. Yale New Haven Hospital, 465 F. Supp. 2d 148, 154 n.2 (D. Conn. 2006); IM Partners v. Debit Direct Ltd., 394 F. Supp. 2d 503, 521 n.12 (D. Conn. 2005).

## I. Tortious Interference with Contract

Ensign next asserts a claim for tortious interference with contract against Saperstein.  In support of this claim, Ensign alleges that Saperstein interfered with Ensign's agreement with Arrigoni by instructing Arrigoni not to cooperate with Ensign until Ensign paid Arrigoni the remaining money due for transport of the Yacht.  "A claim for intentional interference with contractual relations requires the plaintiff to establish:  (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with that relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff which was caused by the defendant's tortious conduct."

The Court concludes that Ensign has stated a cause of action for tortious interference with contract.  Ensign alleges that it had a contract with Arrigoni requiring Arrigoni to obtain proper insurance and thereafter, if necessary, to assist in submitting any insurance claims that may arise.  Ensign further claims that Saperstein advised Arrigoni not to cooperate with the submission of Ensign's claim for damages to the Yacht until Ensign paid Arrigoni in full for the Yacht's transport. Ensign alleges that, as a result of Saperstein's interference, Ensign sustained damages in the amount of $700,000.

Saperstein contends that this claim must be dismissed because Ensign fails to explain how Saperstein's conduct was tortious.  However, Ensign's Amended Complaint describes a course of conduct by Saperstein to conceal from Ensign that it was not properly licensed to issue insurance policies in Connecticut and to deny Ensign's claim without justification.  Saperstein's instruction to Arrigoni advising

35

him not to cooperate with Ensign was allegedly part of this course of conduct.  If proven true, these facts could support the "improper motive or means" necessary to establish the sufficiency of Ensign's tortious interference with contract claim against Saperstein.  See Holler v. Buckley Broadcasting Corp., 47 Conn. App. 764, 769 (1998); Blake v. Levy, 191 Conn. 257, 262 (1983).  Consequently, the Court will not dismiss this claim.

### J.  Loss of Sale

Finally, Lloyds and Saperstein move to dismiss Ensign's claims for "loss of sale" on the basis that loss of sale is an element of damages, not a separate cause of action.  Ensign offers no response to this argument.  Since Ensign has cited no Connecticut cases recognizing a separate cause of action for loss of sale, and has not objected to dismissal of its loss of sale claims, these claims are dismissed.

### III.  CONCLUSION

Based on the above reasoning, Arrigoni's motion to dismiss is GRANTED.  All of Ensign's claims against Arrigoni other than the Second Cause of Action for violation of the Carmack Amendment are dismissed (First, Third, Fourth, Fifth, Sixth, and Seventh Causes of Action).  Lloyds' and Saperstein's motions to dismiss are GRANTED IN PART and DENIED IN PART.  Ensign's fraud and loss of sale claims against Lloyds and Saperstein are dismissed in their entirety (Eleventh, Fifteenth, Eighteenth,[8] and Twenty-Second Causes of Action).  Ensign's CUIPA and

---

[8]  Ensign's Amended Complaint contains two claims against Lloyds designated as the "Eighteenth Cause of Action."  To be clear, the Court is dismissing the fraud claim asserted in ¶¶ 123-125.  The bad faith claim asserted in ¶¶ 113-116 shall go forward.

CUTPA claims against Lloyds and Saperstein are dismissed only insofar as they are predicated upon violation of Conn. Gen. Stat. § 38a-816(6), and shall go forward to the extent they are based upon violation of Conn. Gen. Stat. § 38a-816(1) (Twelfth, Fourteenth, Twentieth, and Twenty-First Causes of Action).  Ensign's breach of contract, breach of the covenant of good faith and fair dealing, bad faith, and tortious interference claims against Lloyds and Saperstein shall go forward as well (Eighth, Ninth, Tenth, Thirteenth, Sixteenth, Seventeenth, and Eighteenth Causes of Action).

IT IS SO ORDERED.

_____/s/_____

Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  March 11, 2010.