UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ENSIGN YACHTS, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:09-cv-209 (VLB) |
| JON ARRIGONI, ET AL., | : | |
| Defendants. | : | July 23, 2010 |

# MEMORANDUM OF DECISION DENYING DEFENDANT LLOYDS OF LONDON'S MOTION FOR RECONSIDERATION [Doc. #114]

Defendant, Certain Underwriters at Lloyds of London ("Lloyds"), brings this Motion for Reconsideration [Doc. # 114] of the Court's March 11, 2010 decision [Doc. # 110] denying in part its Motion to Dismiss the Plaintiff's Amended Complaint. Lloyds requests the Court to reconsider its determination that the Plaintiff sufficiently alleged that it is a third party beneficiary of the insurance agreement between Lloyds and Defendant Jon Arrigoni ("Arrigoni"), and the Plaintiff's allegations of its contractual rights as a third party beneficiary. In addition, Lloyds asks the Court to reconsider whether it lacked authorization to issue insurance policies in Connecticut, which serves as a foundation for the Plaintiff's bad faith and breach of good faith and fair dealing causes of actions. Finally, Lloyds asks the Court to reconsider its denial of the Plaintiff's "CUIPA through CUTPA" misrepresentation claim. The Plaintiff, Ensign Yachts, Inc., ("Ensign") opposes this motion [Doc. # 128], arguing, *inter alia*, that Lloyds has not met the standard for reconsideration. For the reasons stated below, Lloyds' Motion for Reconsideration is DENIED.

## I. BACKGROUND

On March 11, 2010 (the "March 11 Ruling"), the Court entered a Memorandum of Decision and Order [Doc. # 110] which granted in part and denied in part Defendant Lloyds' motion to dismiss [Doc. # 32]. See Ensign Yachts, Inc. v. Arrigoni, No. 3:09-cv-209, 2010 WL 918107 (D. Conn. Mar. 11, 2010). The underlying facts of this case and the grounds for the March 11 Ruling are known to the parties and are therefore not included here. Lloyds timely filed the instant Motion for Reconsideration on March 25, 2010, and Ensign filed its objection thereto on April 26, 2010.

## II. DISCUSSION

"Motions for reconsideration . . . shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." D. Conn. L. Civ. R. 7(c)(1). "Where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Zdanok v. Glidden Co., 327 F.2d 944, 953 (2d Cir.), cert. denied, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). "The standard for granting [a motion for reconsideration] is strict and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). A court should only reconsider a prior decision in the same case

"if there has been an intervening change in controlling law, there is new evidence, or a need is shown to correct a clear error of law or prevent manifest injustice." United States v. Sanchez, 35 F.3d 673, 677 (2d Cir. 1994). Furthermore, a "motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." Lopez v. Smiley, 375 F. Supp. 2d 19, 21 (D. Conn. 2005). Moreover, a party cannot obtain reconsideration based upon evidence that it possessed at the time of its original motion but failed to present. Instead, the "movant must present evidence that is 'truly newly discovered,' that is, evidence that 'could not have been found by due diligence.'" Brocuglio v. Proulx, 478 F. Supp. 2d 297, 300 (D. Conn. 2007) (quoting United States v. Potamkin Cadillac Corp., 697 F.2d 491, 493 (2d Cir. 1983)).

    Lloyds seeks reconsideration of the March 11 Ruling on the following grounds. First, Lloyds contends that the allegations of the Amended Complaint are insufficient for Ensign to assert a claim as a third party beneficiary because Ensign's status and contractual rights as a third party beneficiary were neither expressly nor impliedly alleged in the Amended Complaint and therefore Lloyds did not and could not have breached a duty of good faith and fair dealing to Ensign. Second, Lloyds argues that it was duly authorized to issue insurance policies in Connecticut as demonstrated by reference to public records (although not the record of this case as of March 11, 2010) and therefore, because Ensign's claims of bad faith and breach of good faith and fair dealing rely on an alleged lack of such authorization, these claims should have been dismissed. Third,

**Lloyds contends that there was no direct or indirect communication between Ensign and Lloyds prior to the damage to the yacht and therefore the Plaintiff's statutory "CUIPA through CUTPA" misrepresentation cause of action arising under Conn. Gen. Stat. § 38a-816(a) must fail. Each ground will be addressed in turn.**

## A. <u>Ensign's Status as a Third Party Beneficiary</u>

**Lloyds first argues that Ensign's status and contractual rights as a third party beneficiary were neither expressly nor impliedly alleged by the Plaintiff in the Amended Complaint. Under the standard of review governing motions for reconsideration, the Court should only reconsider its determination that Ensign sufficiently alleged that it was a third party beneficiary of the insurance agreement between Lloyds and Arrigoni if that decision was clearly erroneous. <u>See</u> <u>RJE Corp. v. Northville Industries Corp</u>, 329 F.3d 310, 316 (2d Cir. 2003); <u>Sanchez</u>, 35 F.3d at 677. Although Ensign did not use the legal term "third party beneficiary" in its Amended Complaint [Doc. #111], the Amended Complaint contains numerous statements which indicate that Ensign claimed rights under the insurance policy issued by Lloyds to Arrigoni and under which a Certificate of Insurance was issued to Ensign's predecessor. For example, and as properly pointed out in Ensign's objection to the Motion for Reconsideration [Doc . # 128], Ensign alleged that Lloyds is required to cover Ensign's predecessor as per its contract with Arrigoni in paragraphs 18, 19, and 20 of the Amended Complaint [Doc. # 11], and Lloyds provided a Certificate of Liability Insurance [Doc. #1, Exh. #1] which supported this allegation. In addition, Ensign alleged that it placed**

Lloyds and its agents on notice that the yacht had sustained damages as a result of Arrigoni's negligence, and that it was submitting a claim as a result of the incident. Doc. # 11, ¶¶ 22-23. Ensign further alleged that, despite its demands, Lloyds and its agents refused to process its claim and refused to deal with the public adjuster Ensign had retained to expedite adjustment and payment of the claim. Id. ¶¶ 27, 30. Ensign's claims that it had rights under the contract of insurance between Arrigoni and Lloyds were sufficient to put Lloyds on notice that Ensign was purporting to be a third party beneficiary of the insurance contract. See Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).

Lloyds also argues that even if Ensign did assert that it was a third party beneficiary, the facts alleged are insufficient to support a third party beneficiary claim. However, Lloyds' arguments were previously raised in its motion to dismiss and rejected by the Court. As discussed in the March 11 Ruling [Doc. #110, pgs. 20-21], dismissal of Ensign's claims at this stage of the litigation would be premature because the insurance policy between Arrigoni and Lloyds/Saperstein is not on the record, and as such the Court cannot determine, based upon the "terms of the contract read in light of the circumstances attending its making," whether Arrigoni and Lloyds/Saperstein intended that Lloyds/Saperstein would assume a direct obligation to Ensign. Pelletier v. Sordoni/Skanska Construction Co., 264 Conn. 509, 531 (2003).

Although Lloyds cites legal authority for the proposition that the mere existence of an insurance policy does not create third party beneficiary status for one injured by the acts or omissions of the insured, those cases rest on facts

**distinctly different from the facts of this case. Here, the allegedly injured party claims that it took affirmative steps to be assured coverage and that such assurances were given. Ensign alleges that the assurances were given by an agent of Lloyds, the Saperstein Agency. Ensign did not rely simply on the substance of an insurance policy, but instead relied upon its affirmative acts to receive assurance of coverage under the policy and the acts and representations of Lloyds and its alleged agents upon which it claims it relied to its detriment.**

**Lloyds further claims that because the insurance contract between Lloyds and Arrigoni was formed before any communications between Arrigoni and Ensign, Lloyds could not have possibly intended to make Ensign a third party beneficiary to the original contract. However, this does not demonstrate that the Court's prior ruling was clearly erroneous. It is plausible that Lloyds could have later intended to add Ensign as a third party beneficiary, as supported by the Certificate of Liability Insurance, after the initial insurance contract was formed. Therefore, there has been no demonstration of clear error as required for the Court to reconsider its decision. <u>RJE Corp</u>, 329 F.3d at 316; <u>Sanchez</u>, 35 F.3d at 677.**

### B. <u>Lloyds' Authorization to Issue Insurance Policies in Connecticut</u>

**Lloyds next attempts to submit additional evidence which was available to it at the time of filing, but was not provided in its original motion to dismiss, to demonstrate that it was authorized to issue insurance policies in Connecticut in refutation of Ensign's claims. In support of its motion to dismiss, Lloyds filed a document showing that it was licensed to issue insurance policies in Connecticut**

after, but not at the time the policy in question was issued. It now seeks reconsideration on the basis of a certificate demonstrating that it was licensed to issue insurance policies in Connecticut during the relevant time frame. The Court should only consider the additional evidence if it was undiscoverable by due diligence at the time that Lloyds filed its motion to dismiss. See Brocuglio, 478 F. Supp. 2d at 300. Lloyds argues that this evidence was a matter of public record and a simple phone call to the Insurance Department of the State of Connecticut would have provided one with the necessary evidence. In making this argument, Lloyds acknowledges that it had the ability to but failed to factually substantiate its motion to dismiss. As such, it cannot attempt to do so belatedly by moving for reconsideration.

The Court has no duty to conduct discovery to ascertain the validity or invalidity of a party's claim or defense. While it is true that the Court may consider facts found in the public record, Lloyds has not shown that the Court was required to conduct a public records search and obtain the relevant information that Lloyds could have easily obtained itself by due diligence and filed in support of its motion to dismiss. See Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1088, 1092 (2d Cir. 1995) (court may consider all papers appended as well as matters of judicial notice); see also Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (appended documents and matters of judicial notice may be considered). Therefore, Lloyds has failed to satisfy the standard necessary to permit the Court to consider its newly submitted evidence. See Brocuglio, 478 F. Supp. 2d at 300.

The Court also notes that if Lloyds has in fact produced authentic evidence that it was licensed to issue insurance policies in Connecticut at the time the policy upon which this case is brought was issued, that fact can be raised in a motion for summary judgment, assuming that Lloyds is unable to negotiate a withdrawal of the relevant claims with Ensign.

Furthermore, even if the Court accepts that Lloyds was authorized to issue insurance policies in Connecticut, the decision allowing the relevant claims to proceed was not based solely on Lloyds' lack of such authorization. Rather, the Court rested its decision on both Lloyds <u>and</u> Saperstein's alleged lack of authorization. <u>See</u> Doc. #110, pg. 24. Thus, even if Lloyds itself was authorized to issue insurance policies in Connecticut, its purported agent Saperstein may not have been authorized to issue insurance policies in Connecticut. If this is true, as Ensign alleges, and if Lloyds and Saperstein intentionally concealed this fact, or if Lloyds issued insurance through an unlicensed agent, then Lloyds and Saperstein, who acted in concert or through each other, plausibly acted in bad faith and breached the covenant of good faith and fair dealing. Accordingly, Lloyds has failed to demonstrate that the Court perpetrated a clear error in denying the dismissal of these two claims. Additionally, no unjust burden is placed on Lloyds as a result of the Court's partial denial of its motion to dismiss, as the discovery involved with respect to these two claims is limited in scope to a single contract and transaction.

## C. "CUIPA THROUGH CUTPA" MISREPRESENTATION CLAIM

Finally, Lloyds argues that since there was no direct communication between Saperstein or Lloyds and Ensign, there could been no misrepresentation between the two parties about the "benefits, advantages, conditions or terms of [the] insurance policy." Conn. Gen. Stat. § 38a-816(1). Ensign does not directly contest this argument in its objection. However, as discussed at length in the March 11 Ruling [Doc. #110, pgs. 28-34], Ensign has made been factual allegations that support a "CUIPA through CUTPA" misrepresentation claim. These allegations of fact can be summed up as follows: Lloyds and Saperstein misrepresented to Ensign the coverage of the contract with Arrigoni by intimating that Ensign's predecessor Cigarette was the policy holder in the Certificate of Liability Insurance which they knew was going to be presented to Ensign; Lloyds, as the issuer of the insurance policy, should have known that this representation was not true; Ensign reasonably relied on this misrepresentation; and Ensign suffered pecuniary harm as a result of not being covered by the contract.

Lloyds asserts that the Certificate of Liability Insurance was not a misrepresentation because it states that it confers no rights upon the certificate holder. However, since Ensign had initially received from Arrigoni a certificate that did not state that Ensign was a certificate holder [Doc. #128, Exh. 1], and since Ensign then requested that Arrigoni procure proper documentation, it is a reasonable inference that Saperstein must have known that Ensign believed that it gained rights from being so named and that Ensign was named a certificate holder in order to meet Ensign's expectations and induce it to do business with

Arrigoni. While this earlier certificate was not cited in the Amended Complaint, Lloyds failed to point this out in its motion to dismiss, and in fact made no argument at all as to whether Ensign plausibly alleges a negligent misrepresentation claim pursuant to Conn. Gen. Stat. § 38a-816(1). A motion for reconsideration is not intended to give a party the opportunity to "advance new facts, issues, or arguments not previously presented to the Court." Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stroh Companies, Inc., 265 F.3d 97, 115 (2d Cir. 2001). Therefore, Lloyds' belated attempt to dismiss this claim through its Motion for Reconsideration must fail. Moreover, since it is plausible on the facts alleged that Ensign can prove a "CUIPA through CUTPA" misrepresentation claim, Lloyds has not demonstrated that the Court committed a clear error by declining to dismiss this claim.

### III. CONCLUSION

Lloyds has failed to demonstrate the requisite availability of new evidence or the need to correct a clear error or prevent manifest injustice in order to persuade the court to grant its Motion for Reconsideration. The allegation that Ensign did not expressly or impliedly state that it was a third party beneficiary to the contract between Lloyds and Arrigoni is unfounded. The additional evidence Lloyds wishes to submit regarding its authorization to issue insurance policies in Connecticut was easily available before the filing of its initial motion to dismiss and the discovery Lloyds will be required to provide is not unduly burdensome. Finally, there has been no clear error demonstrated in the Court's earlier ruling

allowing the Plaintiff's "CUIPA through CUTPA" misrepresentation claim to go forward. Accordingly, Lloyds' Motion for Reconsideration [Doc. #114] is DENIED.

IT IS SO ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: July 23, 2010.