UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ENSIGN YACHTS, INC,                    :
          Plaintiff,                   :
                                       :
v.                                     :          CIVIL ACTION NO.
                                       :          3:09-cv-209 (VLB)
JON ARRIGONI ET AL.,                   :
          Defendants.                  :          July 15, 2011


MEMORANDUM OF DECISION GRANTING DEFENDANT
LLOYDS OF LONDON'S MOTION FOR SUMMARY JUDGMENT [Doc. #210]

The plaintiff, Ensign Yachts, Inc. ("Ensign") brought this action for

damages against the defendants, Jon Arrigoni ("Arrigoni") and Arrigoni's insurer

Lloyds of London ("Lloyds").[1]  This case involves the transit of Ensign's 2008 55'

Cigarette Super Yacht from New Jersey to Florida in December 2007 (the

"Yacht").  Ensign alleges that the Yacht was damaged during transit while in the

custody of Arrigoni as a result of Arrigoni's negligence.

On March 11, 2010, the Court dismissed several causes of action asserted

by Ensign.  [Doc. #110].  Ensign's only surviving causes of action are a claim for

violation of the Carmack Amendment against Arrigoni, and claims for breach of

contract, breach of the covenant of good faith and faith dealing, bad faith, and

violation of the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen.

Stat. § 38a-816(1) (a so-called "CUIPA through CUTPA" claim).  Lloyds now

moves for summary judgment with respect to all surviving claims against it on

---

[1]  Ensign also originally named as a defendant the Saperstein Agency, Inc
("Saperstein").  However, all claims against Saperstein were dismissed with
prejudice pursuant to stipulation of the parties on July 2, 2010.  [Doc. #156].

the basis that there is no enforceable contractual relationship between it and Ensign [Doc. #210].[2]  For the reasons stated hereafter, Lloyds's motion for summary judgment is GRANTED.

## I.  FACTUAL BACKGROUND

The following facts relevant the instant motion, which are taken from the parties' Rule 56(a) Statements and supporting affidavits and exhibits, are undisputed unless otherwise noted.

Arrigoni owned and operated a sole proprietorship overland boat hauling business operating under the name Arrigoni Marine Movers.  Def. 56(a)(1) Statement [Doc. #211] ¶ 1.  Saperstein, a Connecticut insurance agency, was Arrigoni's insurance agent in connection with the procurement of cargo liability insurance.  *Id.* ¶ 2.  In early October 2007, Saperstein obtained on behalf of Arrigoni motor truck cargo insurance in the total amount of $1 million through policies issued by Lloyds with effective dates of October 20, 2007 through October 20, 2008 (the "operative policies").  *Id.* ¶¶ 4, 12.  The operative policies were not issued for any particular transport, but rather were issued in connection with the usual course of conduct of Arrigoni's boat hauling business.  *Id.*  Policy number R704230/112 covered the first $250,000 and last $250,000 in loss, while policy number R704390/010 covered between $250,000 and $750,000 in loss.

---

[2]  **Ensign's motion for summary judgment against Arrigoni on its Carmack Amendment claim [Doc. #228], and Ensign and third-party defendant/cross-defendant James Ross's motion for summary judgment with respect to Arrigoni's and Lloyds's fraud claims [Doc. #224], will be addressed in a separate memorandum of decision.**

Cirrincione Dec., Exh. A [Doc. #211-4].  By their terms, the operative policies indemnify Arrigoni and his business for "their legal liability as common carriers for loss of or damage to merchandise" of others while in transport or temporary storage in the course of transit.  *Id.*  The operative policies contain no reference to the rights of any third party beneficiary and make no mention of any procedure to add a third party as an additional insured.  *Id.*

The operative policies were obtained by Saperstein through a solicitation made to Inter Insurance Agency ("Inter Insurance"), a wholesale insurance broker that represents various insurance companies including Lloyds.  Def. 56(a)(1) Statement [Doc. #211] ¶ 6.  Saperstein had a formal agency agreement with Inter Insurance Agency, but had no relationship with Lloyds whatsoever.  *Id.* ¶¶ 7-8.  In fact, Saperstein never had any direct dealings with Lloyds at any time for any purpose.  *Id.* ¶ 9.

The insurance issued through Lloyds was underwritten by The Kiln Group, Limited (the "Kiln Group"), a corporation registered in England operating as an underwriting syndicate affiliated with Lloyds.  *Id.* ¶ 13.  In the United States, the Kiln Group is registered as syndicate 510.  *Id.*  Ensign claims that Lloyds is not licensed to issue insurance in Connecticut.  However, Lloyds has presented proof that, at all times relevant to this action, syndicate 510 and Lloyds were authorized and registered to issue surplus lines of insurance in Connecticut, including the policies at issue in this case.  *Id.* ¶ 14.

In early December 2007, Ensign, through its president James Ross ("Ross"), first contacted Arrigoni regarding possible transport of the Yacht to

Florida.  *Id.* ¶ 15.  At that time, Ross asked whether Arrigoni had insurance coverage, to which Arrigoni responded that he had $1 million in cargo coverage.  *Id.* ¶ 16.  Thereafter, but still in early December 2007, an agreement was entered whereby Arrigoni agreed to transport the Yacht from New Jersey to Florida for $11,500 to be paid by Ensign.  *Id.* ¶ 17.

On December 14, 2007, during transport to Florida the Yacht became dislodged from Arrigoni's trailer, causing it to strike the roadway and resulting in physical damage to the propeller shaft and other engine parts.  *Id.* ¶ 18.  As a result of the damage to the Yacht, Ensign sought recovery initially from Arrigoni and then directly from Lloyds.  However, Ensign had no communication with Lloyds prior to the Yacht being damaged.  *Id.* ¶ 23.

Ensign admits that it had no direct contact with Lloyds prior to the loss on December 14, 2007.  Pl. 56(a)(2) Statement [Doc. #273] ¶ 23.  Ensign claims, however, that Ross requested that Arrigoni have Ensign named as an additional insured on his insurance policies because Ensign's Marine Insurance Policy did not cover overland transit of the Yacht beyond 250 miles.  *Id.* ¶ 16.  Ross testified that he asked Arrigoni for proof that Ensign had been named as an additional insured on his policies several times, both before he loaded the Yacht for transport and during transit.  Ross Dep. [Doc. #211-6] at 124-25, 144-45.  Arrigoni assured him that it "was done," but told him that he could not send him verification because he was on the road.  *Id.*  Ross further testified that he called Saperstein to obtain verification, but that Saperstein told him he would have to speak with Arrigoni.  *Id.* at 144-45.

4

Three days after the Yacht was damaged, on December 17, 2007, Saperstein issued a Certificate of Liability Insurance (the "Certificate") listing the operative policies issued by Lloyds to Arrigoni and naming Ensign's predecessor in interest Cigarette Racing Team ("Cigarette") as the "certificate holder."  Def. 56(a)(1) Statement [Doc. #211] ¶ 19.  The Certificate lists "Arrigoni dba Arrigoni Marine Movers" as the "insured."  Def. Exh. A [Doc. #211-8].  The Certificate expressly states that it is being issued "as a matter of information only and confers no rights upon the certificate holder" and that it "does not amend, extend or alter the coverage afforded" by the operative policies.  *Id.*  Nevertheless, Ensign contends that it believed that the Certificate reflected its agreement with Arrigoni to have Ensign named as an additional insured on the operative policies.  Pl. 56(a)(2) Statement [Doc. #273] ¶ 20.

Arrigoni testified, however, that he never actually asked Saperstein or anyone else to make Ensign a named or additional insured under the operative policies, nor did he ever request that Lloyds assume a direct obligation to Ensign.  Def. 56(a)(1) Statement [Doc. #211] ¶¶ 21-22.  Similarly, Saperstein's owner testified that he had no knowledge of and was unaware of any documentation suggesting that a request to add Ensign as an additional insured on the operative policies was ever made.  Saperstein Dep. [Doc. #211-2] at 122.  Finally, Inter Insurance, Lloyds's wholesale broker, never received any request to add Ensign or any other party as an additional insured on the operative policies.  Cirrincione Dec. [Doc. #211-3] ¶¶ 10-12.

## II.  STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor."  *Huminski v. Corsones*, 396 F.3d 53, 69-70 (2d Cir. 2004).  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied."  *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315 (2d Cir. 2006) (internal quotation marks omitted).  "The moving party bears the burden of showing that he or she is entitled to summary judgment."  *Huminski*, 396 F.3d at 69.  "[T]he burden on the moving party may be discharged by 'showing'—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002).  "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor."  *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002).

## III.  DISCUSSION

Ensign's claims against Lloyds for breach of contract, breach of the covenant of good faith and faith dealing, bad faith, and violation of Connecticut

6

General States § 38a-816(1) ("CUIPA through CUTPA") all rely upon the existence of a contractual obligation on the part of Lloyds to Ensign.  On March 11, 2010, the Court issued a Memorandum of Decision on Lloyds's motion to dismiss holding that although Ensign failed to state a claim upon which relief could be granted on any breach of a direct contractual relationship, the issue of whether Ensign was a third party beneficiary of the insurance contract between Arrigoni and Lloyds could not be resolved on the pleadings.  [Doc. #110] at 19-21; *Ensign Yachts, Inc. v. Arrigoni*, No. 3:09-cv-209 (VLB), 2010 WL 918107, at *9-11 (D. Conn. Mar. 11, 2010).  Since under Connecticut law a third party beneficiary may enforce a contractual obligation without being in privity with the actual parties to the contract, the Court declined to dismiss these claims at the motion to dismiss stage, reserving the issue for summary judgment upon a fully developed factual record.  *Id.*  Thus, the sole issue for the Court to decide in resolving the instant motion is whether Ensign was a third party beneficiary of the insurance policies issued by Lloyds to Arrigoni.

It is well-settled that "the ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the [mutual] intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary] and . . . that intent is to be determined from the terms of the contract read in the light of the circumstances attending its making[.]"  *Pelletier v. Sordoni/Skanska Construction Co.*, 264 Conn. 509, 531 (2003) (quoting *Grigerik v. Sharpe*, 247 Conn. 293, 311-12 (1998)).

"Although . . . it is not in all instances necessary that there be express language in the contract creating a direct obligation to the claimed third party beneficiary . . . the only way a contract could create a direct obligation between a promisor and a third party beneficiary would have to be . . . because the parties to the contract so intended." *Gazo v. City of Stamford*, 255 Conn. 245, 261 (2001).  "The mere fact that a contract of liability insurance exists between the tortfeasor and insurance company does not somehow make the injured party a third-party beneficiary to the contract."  *Alexander v. W.F. Shuck Petroleum Co.*, No. HHBCV085010050, 2009 WL 2783587, at *4 (Conn. Super. Ct. Aug. 3, 2009).

In this case, the operative policies were entered into by Arrigoni and Lloyds no later than October 20, 2007.  The operative policies insured Arrigoni for losses occurring in the normal course of his boat hauling business, and made no mention of any third party beneficiary rights.  Ross first contacted Arrigoni regarding possible transport of the Yacht in early December 2007.  Therefore, neither Arrigoni nor Lloyds could have intended to make Ensign a third party beneficiary of the operative policies when they were created.

Ensign argues that, even though it may not have been a third party beneficiary of the operative policies at the time they were created, it was later added to the policies as an additional insured.  Ensign relies upon the following evidence in support of this theory.  Ross testified that he asked Arrigoni to have Ensign named as an additional insured on his policies because Ensign's insurance did not cover overland transit of the Yacht beyond 250 miles.  Ross

8

claimed that he asked Arrigoni for proof that Ensign had been named as an additional insured on several occasions, both before he loaded the Yacht for transport and during transit.  Arrigoni assured Ross that he had done so, but stated that he could not provide verification because he was on the road.  Ross also contacted Saperstein directly on one occasion, but Saperstein told him he would have to speak with Arrigoni.  On December 17, 2007, three days after the Yacht was damaged during transit, Saperstein issued the Certificate listing the operative policies issued by Lloyds to Arrigoni and naming Cigarette, Ensign's predecessor in interest, as the "certificate holder."  Ross understood the Certificate to mean that Ensign had been named as an additional insured on the operative policies, as Arrigoni had agreed to do, despite the disclaimer contained in the Certificate.

The Court holds that the evidence submitted by Ensign is insufficient to raise a triable issue of material fact as to the existence of a third party beneficiary relationship.  Although Ross repeatedly asked Arrigoni to have Ensign added as an additional insured on his policies, Arrigoni testified that he never actually did so.  Saperstein, Arrigoni's insurance agent, has no knowledge or records documenting that any request to add Ensign to the operatives policies was ever made.  Inter Insurance, Lloyds's wholesale broker, also never received any request to add Ensign or any other party as an additional insured on the operative policies.  The Certificate, which was not issued until three days after the Yacht was damaged, does not state that Cigarette or Ensign is an additional insured.

9

Finally, Ensign admits that it had no contact with Lloyds before the Yacht was damaged during transport on December 14, 2007.  Therefore, there is no evidence that Lloyds was even aware of Ensign's existence prior to the damage occurring, much less that Lloyds intended to grant Ensign third party beneficiary rights under the operative policies.

While Ross may have believed that the Certificate evidenced his agreement with Arrigoni to have Ensign added as an insured under the operative policies, his unilateral belief is insufficient.  The mutual intent of both parties to a contract that a promisor assume a direct obligation to a third party is necessary in order to confer a right of action as a third party beneficiary.  *See Pelletier*, 264 Conn. at 531.  The rationale for this rule rests on the policy of certainty in enforcing contracts.  As the Connecticut Supreme Court has explained:

> [E]ach party to a contract is entitled to know the scope of his or her obligations thereunder.  That necessarily includes the range of potential third persons who may enforce the terms of the contract. Rooting the range of potential third parties in the intention of both parties, rather than in the intent of just one of the parties, is a sensible way of minimizing the risk that a contracting party will be held liable to one whom he neither knew, nor legitimately could be held to know, would ultimately be his contract obligee.

*Grigerik,* 247 Conn. at 312.  Thus, even if Arrigoni agreed to add Ensign to the operative policies as an insured, Ensign cannot assert a right as a third party beneficiary under those policies because there is no evidence that Lloyds, the other party to the insurance contract, ever agreed to assume a direct obligation to Ensign.

Moreover, it is undisputed that the Certificate was issued on December 17,

2007, three days after the Yacht was damaged during transport by Arrigoni.
Thus, even if it is assumed that the Certificate did extend insurance coverage to
Ensign when it was issued, Ensign still could not sustain its claims against
Lloyds because such coverage would only apply to the Yacht in its already
damaged condition.

Accordingly, there is no reasonable view of the evidence whereby Ensign
could be considered a third party beneficiary of the operative policies between
Arrigoni and Lloyds, and thus there is no enforceable contractual obligation
between Ensign and Lloyds, which defeats Ensign's breach of contract claim.

The absence of a contractual obligation between Ensign and Lloyds is also
fatal to the remaining claims of breach of the covenant of good faith and fair
dealing, bad faith, and violation of "CUIPA through CUTPA."  "[T]he existence of
a contract between the parties is a necessary antecedent to any claim of breach
of the duty of good faith and fair dealing."  *Macomber v. Travelers Prop. and Cas.
Corp.*, 261 Conn. 620, 638 (2002).  Likewise, there can be no legally viable claim
for bad faith in the absence of a contractual obligation between the parties.  *See
Carford v. Empire Fire and Marine Ins. Co.*, 94 Conn. App. 41, 45-47 (2005).
Finally, the absence of a contractual obligation defeats Ensign's "CUIPA through
CUTPA" claim as well.  *Id.* at 53 (holding that "the right to assert a private cause
of action for CUIPA violations through CUTPA does not extend to third parties
absent subrogation or a judicial determination of the insured's liability").

### IV.  CONCLUSION

Based on the above reasoning, Lloyds's motion for summary judgment is GRANTED.  Since all claims against Lloyds have now been dismissed, the Clerk is directed to terminate Lloyds as a defendant to this action.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  July 15, 2011.