UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ENSIGN YACHTS, INC., : | |
|     Plaintiff, : | |
| v. : | CIVIL NO. |
| : | 3:09-cv-209 (VLB) |
| JON ARRIGONI, : | |
|     Defendant, : | |
| : | |
| CERTAIN UNDERWRITERS AT LLOYDS OF : | |
| LONDON SUBSCRIBING TO POLICY NOS. : | |
| R704230/112 AND R704390/010, : | |
|     Third Party Plaintiff, : | |
| v. : | November 2, 2011 |
| : | |
| James M. Ross, : | |
|     Third Party Defendant : | |

### Decision Denying [Dkt. #426] Plaintiff's Motion for a New Trial

The Plaintiff, Ensign Yachts ["Ensign"], and Third-Party Defendant, James M. Ross ["Ross Sr."] move pursuant to Rule 59 of the Federal Rules of Civil Procedure for a new trial on two grounds. First, Ensign and Ross Sr. move for a new trial on the grounds that the jury verdict finding that Ensign and Ross Sr. committed fraud was against the weight of the evidence. Second, Ensign and Ross Sr. move for a new trial on the grounds that the Court's Order [Dkt. #191] denying Plaintiff's Motion for Leave to Substitute an Expert Witness in the place of Ross Sr. resulted in unfair influence or prejudice against Ensign and Ross Sr. by forcing them to rely on a witness that was facing a fraud claim to prove damages which resulted in Ensign receiving only a portion of its actual damages on its Carmack claim.

I.   Background

Plaintiff, Ensign Yachts, brought this action against the Defendant, Jon Arrigoni, ["Arrigoni"] under the Carmack Amendment for damages sustained during the transit of Ensign's 2008 55' Cigarette Super Yacht, [the "yacht"] from New Jersey to Florida in December 2007. Arrigoni and Arrigoni's insurer, Lloyd's of London ["Lloyd's"], filed, respectively, a Counterclaim and Third-Party Complaint against Ensign and Ross Sr. alleging that Ensign and Ross Sr. committed fraud by falsely representing to Arrigoni and Lloyd's that Ensign had obtained a contract to sell the yacht to Masterski Pilou Agency and seeking losses allegedly arising out of the sale to Masterski Pilou Agency.

Between September 13, 2011 and September 23, 2011 the Court presided over a jury trial addressing: (1) Ensign's claim under the Carmack Amendment for damages against Arrigoni and (2) Arrigoni and Lloyd's claims of fraud against Ensign and Ross Sr.

Regarding the fraud Claim, Ross. Sr. testified that after a series of communications and negotiations, a contract for sale of the yacht to Masterski Pilou Agency was established in early December 2007, necessitating the transport of the yacht to Florida. Several of these communications were entered into evidence, including an email from "Pilou" to "Xtreme Games," where Fabrice Fontanez worked as a yacht broker, stating that the client was "hot to buy" the yacht. [Pl. Ex. 47].

Ross Sr. testified that the contract for sale was obtained prior to his retention of Arrigoni to transport the yacht to Florida. Ross Sr. further testified

that although he created the document titled "Yacht Purchase Agreement" in advance of arranging for the yacht's transportation to Florida, the document statistics indicate that the document was created on December 15, 2007 because after modifying the document in order to transmit the final version to Masterski Pilou Agency for execution, he used the "save as" function in his word processor which resulted in a new date being assigned to the document and caused the original document to disappear. Ross Sr.'s son, Ross Jr. testified that he serves as his father's technology assistant and that pursuant to this role he has advised his father to use the "save as" function when modifying documents. However, Ross Jr. testified that it is his understanding that if a document is modified and then saved using the "save as" function, the original document remains in existence, and the newly modified document is saved as a separate document.

      Additionally, five witnesses testified that Ross Sr. informed them that the yacht was being transported to Florida because it had been sold. Finally, Fabrice Fontanez, an agent for Masterski Pilou, testified that he emailed an executed copy of the Yacht Purchase Agreeement to Ross Sr.[1]

      In support of their fraud claim, Arrigoni and Lloyd's offered evidence to establish that Ensign and Ross Sr. knew or had reason to know that no contract to sell the yacht to Masterski Pilou agency existed. Arrigoni and Lloyd's offered into evidence communications between Pilou, Fontanez, and Ross Sr. informing Ross that the transaction could move quickly provided that several conditions could be satisfied, including the procurement of a Certificate of European Compliance. Further, the Yacht Purchase Agreement itself was offered into

---

[1] Fontanez was not responsive to attempts to secure his presence at trial.

evidence, signed at the bottom by "Philippe Brun/Masterski Pilou Agency" and dated "12-15-2007." [Pl. Tr. Ex. 54]. Arrigoni and Lloyd's also offered into evidence a computer screen shot of Ross Sr.'s computer file labeled "Masterski" containing a document titled "Yacht Purchase Agreement 12-07." [Def. Tr. Ex. F]. The computer screen shot recorded both the "Date Created" and the "Date Modified" of the Yacht Purchase Agreement as "12/15/2007," contrary to the testimony of Ross Sr. that he had created the Yacht Purchase Agreement much earlier but deleted the source document by using the "save as" function. Finally, Arrigoni and Lloyd's offered a sworn statement of Philippe Brun, unavailable to testify at trial, that he did not sign the Yacht Purchase Agreement. Brun's testimony also confirmed the existence of a condition precedent to the sale requiring the procurement of a Certificate of European Compliance and addressed the time and cost required to secure such a certificate.

    In charging the jury, the Court instructed the jurors of their ability to consider the credibility of witnesses and any interest that a witness may have to testify falsely. The jurors were instructed that if they found a witness to have testified falsely, they could choose to believe all, some or none of that witness's testimony.

    On September 23, 2011, the jury returned a verdict for Ensign on its Carmack Claim, awarding $107,080.62 in damages. The jury also returned a verdict for Arrigoni and Lloyd's on their fraud claims against Ensign and Ross Sr., finding that Arrigoni had sustained $1,997.50 in damages and Lloyd's had sustained $13,683.92 in damages as a result of the fraud committed by Ross Sr.

and Ensign, and finding that punitive damages should be awarded against Ensign and Ross Sr. on behalf of both Arrigoni and Lloyd's.

## II.     Standard of Review

Rule 59(a) of the Fed. R. of Civ Pr. provides that a court may grant a new trial on some or all of the issues raised at trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. Pr. 59(a)(1).  A motion for a new trial " pursuant to Rule 59 of the Federal Rules of Civil Procedure 'should not be granted unless the court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Izzarelli v. R.J. Reynolds Tobacco Co.*, No. 3:99-cv-2338 (SRU), 2011 WL 3803900, at *6 (D. Conn. Aug. 26, 2011) (quoting *Kosmynka v. Polaris Indus.*, 462 F.3d 74, 82 (2d Cir. 2006).

In analyzing a Rule 59(a) motion for a new trial, "the court may consider the credibility of the witnesses and the weight of the evidence, however, 'Rule 59 is not a vehicle for the relitigation of old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.''" *Id.* (citing *Lawyers Title Ins. Corp. v. Singer*, No. 3:07cv804 (MRK), 2011 WL 1870277 at *5 (D.Conn. May 16, 2011) (citation omitted)). The standard for granting a motion for a new trial is high, and a court should only grant such a motion when the jury's verdict is "egregious." *DLC Management Corp. v. Town of Hyde Park*, 16 3 F.3d 124, 134 (2d Cir. 1998).  Accordingly, "a court should rarely disturb a jury's evaluation of a witness's credibility." *Id.*

III.     Discussion

    a. Fraud Verdict

Ensign and Ross Sr. have moved for a new trial on the grounds that the fraud verdict against them was not supported by the evidence. Specifically, Ensign and Ross Sr. assert that neither the Defendant, Jon Arrigoni, nor Third-Party Plaintiff Lloyd's of London produced any evidence to satisfy their burden of establishing by clear and convincing evidence that either Ensign or Ross Sr. forged the signature of Philippe Brun/Masterski Pilou on the Yacht Purchase Agreement or knew that it had been forged to contradict the evidence submitted by the Plaintiff demonstrating that Ensign and Ross Sr. reasonably believed that a valid contract for sale existed.

Considering both the weight of the evidence and the credibility of witnesses, the Court finds that in imposing a fraud verdict against both Ensign and Ross Sr. the jury did not reach a seriously erroneous result.  The jury was presented with ample evidence contradicting Ensign and Ross Sr.'s claim of a good faith, reasonable belief that a contract existed prior to the transport of the yacht.

Most notably, the jury saw the Yacht Purchase Agreement itself which lacked facial credibility. [Pl. Tr. Ex. 54].  The Agreement was signed by "Philippe Brun/Masterski Pilou Agency" and was dated "12-15-2007," contrary to the standard French method of writing the date which lists the day, the month, and then the year. *Id.*  Moreover, Brun's signature was entirely dissimilar to his signature on his passport, also offered into evidence. [TP. Tr. Ex. 5-5 Brun]. The

validity of the Yacht Purchase Agreement was further undermined by the introduction of a Certified Translation of an Affidavit of Philippe Brun affirming that he did not sign, nor authorize anyone to sign for him, the Yacht Purchase Agreement and that "no contract, be it verbal or in writing, was concluded." [Def. Tr. Ex. C-1].

The jury also saw a computer screen shot of Ensign's "Masterski" file listing both the "Date Created" and the "Date Modified" of the Yacht Purchase Agreement as "12/15/2007" in contradiction of Ross Sr.'s sworn testimony that an agreement for the sale of the yacht to Masterski Pilou Agency had been obtained in early December, prior to his retention of Arrigoni to transport the yacht to Florida [Def. Tr. Ex. F]. Ross Jr. testified in further contradiction of his father's sworn testimony that the "Dated Created" had been modified through the use of the "save as" function, that the use of the "save as" function does not destroy the original document, but merely saves a second, new document in addition to the original.

The jury was also offered evidence of several communications between Pilou, Fontanez and Ross Sr. notifying Ross Sr. of several prerequisites to the finalization of an agreement for sale, including an email from Pilou to Ross Sr. dated December 12, 2007 stating "Merci Jim I need to know if wee can have the europeen agreement because you know how the French authority" and concluding "I think the deal can go fast," allowing the jury to conclude that that a deal had not yet been obtained as of December 12, 2007. [TP Tr. Ex. 5-3-Brun]. The jury received a corresponding email from Ross Sr. to Pilou stating "I am not

familiar with the Europeen Agreement. Can you explain this in detail and we will be happy to provide it for you," which the jury could reasonably have interpreted to indicate Ross Sr.'s acknowledgment of the Certificate of European Conformity as a prerequisite to the sale.

From this evidence, the jury could have reasonably inferred that Ross Sr., motivated to recover his losses due to his inability to sell the yacht and over-leveraged by his construction of a $4,000,000 home, colluded with Fontanez to present a false contract for sale.

Moreover, the only testimony Ensign and Ross Sr. offered to support their allegation that they had a good faith and reasonable belief that a contract for sale of the yacht existed prior to the transportation of the yacht to Florida was the testimony of Ross Sr. and several witnesses who had been informed by Ross Sr. that he had obtained a contract to sell the yacht. Ensign and Ross called James Robert Gardella, Skip Braver, Steven Babbitz, Phillip Melillo and James Ross Jr. to testify that Ross Sr. had advised them prior to the yacht's transportation to Florida, that the vessel had been sold to an entity in the Caribbean and was being transported to Florida to be shipped to the purchaser. However, each of these witnesses had a connection to Ross Sr. to allow the jury, consistent with the jury charge allowing them to consider the credibility of witnesses, to infer a bias to discredit the testimony. James Ross Jr., as Ross Sr.'s son has an obvious motive to protect his father. Phillip Melillo is a close personal friend of Ross Sr. and extended a generous loan to Ross Sr. and therefore had both a personal and a financial incentive to protect him. Ross Sr. and Melillo were such close friends

that Melillo went to assess the damage to the yacht and adjust the claim as a favor to Ross Sr. Lastly, Skip Braver was a former business partner of Ross Sr. and Robert Gardella had stored the yacht at his marina.

In addition to the relationships of each of these witnesses to Ross Sr. enabling the jury to discredit their testimony as biased, the testimony of these five witnesses is inherently linked to jury's perceived credibility of Ross Sr. given that their testimony simply conveyed what Ross Sr. had told them. Therefore, once the jury was presented with evidence impeaching Ross Sr.'s credibility, the jury, consistent with the jury charge regarding credibility of witnesses, was free to discredit, all or some of Mr. Ross's testimony.

Ross Sr.'s credibility was severely impeached at trial, most notably through the introduction of a YouTube video of Ross Sr. and Fabrice Fontanez on a yacht in the South of France directly contradicting Ross Sr.'s sworn testimony that he had only seen Fontanez on one occasion, at the Norwalk Cove Marina in Connecticut, since the dealings regarding the sale of the yacht and that he had no business relationship with Fontanez. Contrary to this testimony, the YouTube video, a promotional video for NuMarine, displayed Ross Sr. with one of his yacht dealers on a yacht in St. Tropez with Fabrice Fontanez in 2010, establishing that he had not only seen Fontanez on at least one additional occasion, but also that he had a business relationship with Fontanez. Further, when presented with this video on cross-examination, Ross Sr. was at best evasive in answering questions concerning the identities of the people shown in the video.

Analyzing the weight of the evidence presented, it is readily apparent that the jury's fraud verdict against Ensign and Ross Sr. was not "egregious" or "seriously erroneous" to justify granting a new trial. *See Kosmynka*, 462 F.3d at 82; *DCL Management*, 16 F.3d at 134.  The jury was presented with ample evidence to support their conclusion that Ensign and Ross knowingly and falsely represented to Arrigoni and Lloyd's that they had obtained a contract to sell the yacht prior to the yacht's transport to Florida.  Moreover, whereas here a significant portion of the evidence evaluated by the jury related to Ross Sr.'s credibility and trustworthiness, the Court will not disturb the jury's evaluation of the witnesses' credibility. *See DCL Management*, 16 F.3d at 134.

    b. Unfair Prejudice Resulting from Denial of Leave to Substitute
       Expert Witness

Ensign and Ross Sr. also contend that they are entitled to a new trial on the grounds that the Court's denial of their request to substitute another expert witness in the place of Ross Sr. resulted in unfair influence and prejudice against them and prevented them from obtaining all of their out of pocket losses sustained as a result of the damage to the yacht.

This claim is not an appropriate basis for a new trial. A Motion for a New Trial under Rule 59(a) requires a court to evaluate "the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury

has reached a seriously erroneous result." *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir. 1978). The Court's ruling relating to the extension of the discovery period and the retention of an additional expert witness in advance of trial is simply not relevant to the evidence considered by the jury and relied upon to reach its verdict. [Dkt. #191].

Although, as Ensign and Ross Sr. contend in their Motion for a New Trial, courts have granted new trials on the basis of prejudice caused by a judge's actions, these decisions relate to judicial activity *during* a trial causing such severe prejudice to a party so as to deprive the party of a fair trial. *See Aggarwal v. Ponce School of Medicine*, 837 F.2d 17, 21-22 (1st Cir. 1988) (holding that bias and improper conduct by a trial judge may be grounds for a new trial, if "a party was so seriously prejudiced as to be deprived of a fair trial."). Accordingly, here, where the Court's ruling occurred over a year in advance of trial, it is an entirely inappropriate basis for a Rule 59(a) Motion for a New Trial.

Moreover, Ensign and Ross Sr. learned of the allegations of fraudulent conduct long before their motion for leave to add an additional expert. Ross Sr. became aware that his credibility was subject to impeachment when he learned at Brun's deposition of Brun's sworn testimony that he did not sign the Yacht Purchase Agreement. At the very latest, Ensign and Ross Sr. became aware of the fraud claim against them on July 7, 2010 when Lloyd's of London filed a Third Party Complaint against them sounding in fraud and yet Ensign and Ross did not seek to add an additional expert until September 2010, on the eve of the discovery deadline. Therefore, Ensign and Ross Sr.'s contention that the Court's

refusal to allow the retention of an additional expert witness resulted in unfair prejudice against them at trial and tainted the jury's verdict is wholly without merit because it is not the proper subject matter of a motion for a new trial, and because Ensign and Ross Sr. had ample notice of the allegation of fraud.

IV.   Conclusion

Based upon the foregoing reasoning, Ensign and Ross Sr.'s Motion for a New Trial is DENIED. The Court holds that the evidence and testimony presented at trial fully justified the jury's verdict of fraud entered against Ensign and Ross Sr. Additionally, the Court holds that the pre-trial ruling denying Ensign and Ross Sr.'s request to obtain an additional expert is wholly irrelevant to the evidence presented to and reviewed by the jury at trial, and therefore does not warrant a new trial.

IT IS SO ORDERED.

_____/s/_____

Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: November 2, 2011.