UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ENSIGN YACHTS, INC.,<br>    Plaintiff, | : | |
| | : | |
| v. | : | CIVIL NO. |
| | : | 3:09-cv-209 (VLB) |
| JON ARRIGONI,<br>    Defendant, | : | |
| | : | |
| CERTAIN UNDERWRITERS AT LLOYDS OF<br>LONDON SUBSCRIBING TO POLICY NOS.<br>R704230/112 AND R704390/010,<br>    Third Party Plaintiff, | : | |
| | : | |
| v. | : | September 24, 2012 |
| | : | |
| James M. Ross,<br>    Third Party Defendant | : | |

## ORDER ON MOTIONS FOR ATTORNEY'S FEES BY LLOYDS OF LONDON [Dkt. Nos. 432,464]

This case involves the transit of a 2008 Cigarette Super Yacht owned by Plaintiff Ensign Yachts, Inc. ("Ensign") from New Jersey to Florida in December 2007 by Defendant Jon Arrigoni ("Arrigoni"). Ensign, through its president, James Ross ("Ross"), brought this action for damages against Arrigoni and Arrigoni's insurer Lloyds of London ("Lloyds") for damage incurred during the yacht's transit when it became dislodged from Arrigoni's trailer and struck the roadway. Ensign brought numerous claims against Arrigoni and Lloyds, including breach of contract, breach of the covenant of good faith and fair dealing, bad faith, negligence, violations of the Connecticut Unfair Insurance

1

Practices Act, loss of sale, and violation of the Carmack Amendment to the Interstate Commerce Act of 1887, 49 U.S.C. 14706, et seq., several of which the Court dismissed on March 11, 2010.  See *Ensign Yachts, Inc. v. Arrigoni*, No. 3:09–cv–209 (VLB), 2010 WL 918107 (D. Conn. Mar. 11, 2010).  During the course of discovery and before the Court dismissed Lloyds from the case, Lloyds and Arrigoni discovered evidence of fraud on the parts of Ensign and Ross relating to the supposed contract of sale for the yacht to a third party.  Lloyds filed a third party complaint against Ensign on July 7, 2010 alleging that Ensign and Ross had committed fraud by presenting a false contract for sale of the yacht for $1.2M with a supposed buyer in the French West Indies who had subsequently canceled the sale upon the transit accident.  [Dkt. No. 158, Lloyds Third Party Complaint]  The Court dismissed Lloyds as a defendant on July 15, 2011.  [Dkt. No. 319, Memo. of Decision]

    The case was tried before a jury, which heard the Carmack Amendment claim and claims of fraud against Ensign and Ross.  The jury returned a verdict for Ensign on its Carmack Amendment claim and a verdict for Defendant Arrigoni and Third Party Plaintiff Lloyds as to their fraud claims. [Dkt. 421, Jury Verdict Form]  The jury awarded compensatory damages of $1,997.50 and $13,683.92 to Arrigoni and Lloyds respectively, plus punitive damages; the Court entered judgment in these amounts January 3, 2012.  [*Id.*; Dkt. 449, Amended Judgment] Arrigoni and Lloyds moved for Prejudgment Remedy, upon which motions a hearing was held on February 8, 2012.  [Dkt. Nos. 450, 441, 465]  Lloyds has now moved for costs, punitive damages and attorneys' fees.

## Attorney's Fees

"The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1671 (2010). "[T]he prevailing party is not entitled to collect from the loser." *Buckhannon Bd. and Care Home, Inc. v. West Va. Dep't of Health and Human Resources*, 532 U.S. 598, 602 (2001). "Under this American Rule, we follow a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Id.* (internal quotation marks omitted). Under Connecticut law also, "[a]bsent contractual or statutory authorization, there can be no recovery, either as costs or damages for counsel fees by a party opponent from his opponent." *O'Leary v. Industrial Park Corp.*, 211 Conn. 648, 651 (Conn. 1989) (internal citations and quotation marks omitted). See also *Maris v. McGrath*, 269 Conn. 834, 835 (Conn. 2004) (attorneys' fees to the prevailing are barred "except as provided by statute or in certain defined exceptional circumstances"); *Plikus v. Plikus*, 26 Conn. App. 174, 180 (Conn. App. Ct. 1991) ("[a]bsent statutory or contractual authority, attorney's fees are not recoverable").

There are several exceptions to the American Rule. Under both federal and Connecticut law, "[t]he [American] rule does not apply . . . where the other party or his attorney has acted in bad faith. This is what is known as the bad faith exception to the American rule." *Maris*, 269 Conn. at 835-36 (affirming an award of attorneys' fees to the defendant based on plaintiff's dishonest testimony). See also *ACMAT Corp. v. Greater New York Mut. Ins. Co.*, 282 Conn. 576, 582 (Conn. 2007) (exception to the American Rule "permits a court to award attorney's fees

to the prevailing party on the basis of bad faith conduct of the other party or the other party's attorney"). More specifically, "a court may assess attorneys' fees . . . when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Aleyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258 (1975) (setting out exceptions to Rule). A finding of bad faith in the Second Circuit requires "clear evidence that the claims are entirely without color and made for reasons of harassment or delay or for other improper purposes." *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980) (internal quotation marks and citations omitted). "A claim is colorable, for the purpose of the bad faith exception, when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim." *Id.*

Lloyds requests attorney's fees and litigation expenses for the entirety of this action, arguing that Ensign's claims have been "largely premised on fraud throughout the life of this case" such that the bad faith exception to the American Rule should apply and the Court should award Lloyds full fees. [Dkt. 433, Lloyds Mot. for Attys' Fees at 2; Dkts. 432,464] The Court declines to award attorney's fees and costs for the entirety of the litigation to Lloyds based on the bad faith exception to the American Rule. Although Lloyds prevailed in its fraud claims against Ensign and Ross, Ensign raised in this action a colorable Carmack claim – on which claim Ensign won at trial, a colorable question of law at the summary judgment stage regarding whether it was a third party beneficiary to the insurance policies issue by Lloyds to Arrigoni, and a colorable negligence claim. These claims were not brought in and their litigation did not constitute bad faith,

4

nor was their prosecution vexatious, wanton, or for oppressive reasons; conversely, these claims had legal and factual support at the time the action commenced. Legal bills incurred as a result of these claims are not the result of the fraud claims in this action. The Court declines to impose what amounts to sanctions against Ensign and Ross in light of the existence of colorable legal claims. Lloyds' request for attorney's fees and/or costs for the entirety of the action is therefore DENIED.

## Punitive Damages

A second exception to the American Rule occurs under Connecticut law, where a court may award attorneys' fees as a component of punitive damages. *O'Leary*, 211 Conn. at 651; *Plikus*, 26 Conn. App. at 180. Punitive damages, in turn, may be awarded upon a showing of fraud. *O'Leary*, 211 Conn. at 651; *Plikus*, 26 Conn. App. at 181. "Punitive or exemplary damages in a fraud case include attorney's fees." *Wedig v. Brinster*, 1 Conn. App. 123, 134 (Conn. App. Ct. 1983). The longstanding rule in Connecticut is that common law punitive damages are limited to a party's litigation expenses less taxable costs. *Berry v. Loiseau*, 223 Conn. 786, 826 (Conn. 1992) (declining to abandon this "well established rule governing punitive damages"). See also *Elio v. Pacesetter Adjustment Co.*, No. CV075002799S, 2009 WL 3839300, at *8 (Conn. Super. Ct. Oct. 21, 2009) (awarding attorneys' fees as a portion of punitive damages on a fraudulent misrepresentation claim). "Litigation expenses may include not only reasonable attorney's fees, but also any other nontaxable disbursements reasonably necessary to prosecuting the action." *Berry,* 223 Conn. at 832.

**Notably, applicants for attorneys' fees have the burden of proof to establish entitlement to the award.  See *Smith v. Snyder*, 267 Conn. 456, 471 (Conn. 2004) ("[The Connecticut Supreme Court] ha[s] long [] held that there is an 'undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an appropriate evidentiary showing'"); *Lavoie v. Hoffman of Hartford, Inc.*, 2006 WL 829657, at \*1 (Conn. Super. Mar. 15, 2006) (noting also that "a request for attorneys fees should not result in a further major litigation").  "Even though a court may employ its own general knowledge in assessing the reasonableness of a claim for attorney's fees, we also have emphasized that no award for an attorney's fee may be made when the evidence is insufficient."  *Smith*, 267 Conn. at 472 (internal quotation marks and citations omitted).  Lastly, an applicant for attorneys' fees "should exercise 'billing judgment' with respect to hours worked and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).**

**Here, the jury awarded punitive damages to Arrigoni and Lloyds on their fraud claims against Ensign and Ross.  Thus, the Court GRANTS to Lloyds and against Ensign and Ross, jointly and severally, punitive damages in the amount of the attorney's fees and costs incurred in defending and prosecuting the fraud claims in this action, the total amount of which the Court will detail below.**

**"To determine reasonable attorneys' fees, the Second Circuit has historically implemented the lodestar method of examining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Silver v. Law Offices Howard Lee Schiff, P.C.*, No.3:09cv912(PCD), 2010 WL**

5140851, at *1 (D. Conn. Dec. 15, 2010) (internal quotation marks and citation omitted).  This test is consistent with Connecticut law: "the initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.... The courts may then adjust this lodestar calculation by other factors."  *Land Group, Inc. v. Palmieri*, 123 Conn. App. 84, 98 (Conn. App. Ct. 2010) (citation omitted).  Recently, though, "the [Second Circuit] determined that '[t]he meaning of the term 'lodestar' has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness.'"  *Id*.  (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 182 (2d Cir. 2008)).  "In place of the lodestar method, the court used the 'presumptively reasonable fee' standard."  *Id*.

   The Second Circuit has noted that "[w]hile the Arbor Hill panel indicated its preference for abandonment of the term 'lodestar' altogether, the approach adopted in that case is nonetheless a derivative of the lodestar method."  *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 n.2 (2d Cir. 2010).  In *Arbor Hill*, the Second Circuit instructed that:

> [T]he better course – and the one most consistent with
> attorney's fees jurisprudence – is for the district court,
> in exercising its considerable discretion, to bear in mind
> *all* of the case-specific variables that we and other
> courts have identified as relevant to the reasonableness
> of attorney's fees in setting a reasonable hourly rate.
> The reasonable hourly rate is the rate a paying client
> would be willing to pay. In determining what rate a
> paying client would be willing to pay, the district court
> should consider, among others, the *Johnson* factors; it
> should also bear in mind that a reasonable, paying client

7

> wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case. The district court should then use that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee."

*Arbor Hill*, 522 F.3d at 190.

Consequently, courts have described the "presumptively reasonable fee" analysis as a "process" that is "really a four-step one, as the court must: '(1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award.'" *Vereen v. Siegler*, No.3:07CV1898, 2011 WL 2457534, at *1 (D. Conn. June 16, 2011) (quoting *Adorno v. Port Authority of New York and New Jersey*, 685 F. Supp. 2d 507, 510 (S.D.N.Y. 2010)).

Here, Lloyds seeks $92,166.25 for 335.15 hours at $275 per partner hour, detailed in its Motion for Attorney's Fees [Dkts. 432, 433-1] and Supplemental Motion for Attorney's Fees [Dkt. 464].

i.  **Reasonable Hourly Rate**

In *Arbor Hill,* the Second Circuit indicated the relevant factors in determining the reasonable hourly rate were articulated in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required

8

> to perform the legal service properly; (4) the preclusion
> of employment by the attorney due to acceptance of the
> case; (5) the attorney's customary hourly rate; (6)
> whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances;
> (8) the amount involved in the case and the results
> obtained; (9) the experience, reputation, and ability of
> the attorneys; (10) the "undesirability" of the case; (11)
> the nature and length of the professional relationship
> with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19.

Reasonable hourly rates "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998). "The determination of a prevailing rate requires a 'case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel.'" *M.K. ex rel. K. v. Sergi*, 578 F. Supp. 2d 425, 427 (D. Conn. 2008) (quoting *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005)).

Lloyds has requested a rate of $275 per hour, which has remained constant throughout this litigation. This rate is consistent with the rates awarded to general civil litigation attorneys in this district. See *Bridgeport and Port Jefferson Steamboat Co. v. Bridgeport Port Authority*, No. 3:03–CV–599 CFD, 2011 WL 721582, at * 5-6 (D. Conn. Feb. 22, 2011) (finding $325-$425 per hour to be reasonable for partners in a case involving federal constitutional issues, the River

9

and Harbors Appropriation Act of 1884, and various state law causes of action, including violation of the Connecticut Unfair Trade Practices Act; $225-$275 to be reasonable for associates; and $100 to be reasonable for summer associates and paralegals); *Vereen*, 2011 WL 2457534, at *3 (finding $400 per hour to be reasonable for a partner in a civil rights action, and $250 to be reasonable for associates); *Cumulus Broadcasting v. Okesson*, Civ. No. 3:10CV315 (JCH), 2012 WL 3822019 (D. Conn. Sept. 4, 2012) (finding $375-$425 per partner hour to be reasonable in an action for enforcement of provisions of an employment contract); *Drummond American LLC v. Share Corp.*, No. 3:08CV1665 (MRK), 2010 WL 2574096 (D. Conn. Apr. 9, 2010) (approving $245-$330 per partner hour in an action involving a breach of a covenant not to compete). Therefore, the Court approves Lloyds' requested hourly rate of $275 as it is in line with prevailing rates.

    ii.    Reasonableness of time spent

"The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). *Id*. Lloyds has submitted detailed and itemized statements of fees, broken down by time spent on the fraud claims. Billing records for Lloyds show a total of 335.15 hours of work. [Dkt. Nos. 433-1, 464]

It does not appear after a review of Lloyds' fee records that they, on the whole, include excessive, redundant or otherwise unnecessary hours. For

10

example, attorney D. Lincoln Woodard for Lloyds billed 2.3 hours to draft Lloyds' nine page third-party complaint against Ross detailing Ross's alleged fraud throughout the course of the litigation. See [Dkt. No. 158, Third Party Complaint]. Woodard billed 15.3 hours researching, drafting, revising, and finalizing Lloyds' objection to Ensign's Motion for Summary Judgment as to fraud, a Local 56(a)(2) Statement, and an Affidavit, comprising a total of 19 pages plus 112 pages of exhibits. [Dkt. No. 433-1, p. 37; Dkt. Nos. 261, 262, 263, Lloyds' Objection to Ensign's MSJ]  The Court finds these hours to be reasonable.

However, upon careful review of Lloyds' detailed billing statements and Ensign's and Ross's objections to certain entries, the Court must reduce the total number of hours to be compensated in the form of punitive damages.  Ensign and Ross have objected to certain of the costs detailed in Lloyds' Supplemental Motion for Attorney's Fees, including those addressing corrections in judgment entered by the Court and Ensign's and Ross's motion for a new trial. [Dkt. No. 471, Ensign/Ross Obj. to Supp. Mot. for Attys' Fees]  Because certain of these entries do not clearly relate to the fraud claims, or the entry is such that the Court cannot determine what portion of the total time claimed related to the fraud claim, the Court declines to award fees for those entries.  For example, Lloyds has submitted claims for reimbursement for "Receipt and review of court order denying the plaintiff's Motion for New Trial; Correspondence to company re: same; Revisions to PJR papers and joint objection." [Dkt. 464, Lloyds Supp. Mot. for Attys' Fees]  Plaintiff's motion for a new trial does not directly relate to the

fraud claims. Thus, the Court will revise downward the total fees sought in Lloyds' Supplemental Motion for Attorney's Fees.

Likewise, the Court declines to award fees for certain entries in Lloyds' Motion for Attorney's Fees [Dkt. Nos. 432, 433-1] for the same reasons. For example, Lloyds has submitted reimbursement for 1.5 hours based upon the following billing entry:

> Receipt and review of Memorandum and multiple affidavits and new email information from plaintiff;
> Memo re: cross points for Ross at dismissal hearing;
> Correspondences to company re: new developments;
> Correspondence to St. Barts' counsel.

[Dkt. 433-1, p. 29] Although correspondence with counsel in St. Bart's is related to the fraud claims in this action, it is impossible for the Court to determine whether receipt and review of "Memorandum and multiple affidavits and new email information from plaintiff" is related at all to the fraud. Therefore, all entries containing such deficiencies have been deleted or revised downward for inclusion in the total fee calculation.

In sum, the Court reduces the total number of attorney hours to be compensated from 335.15 to 315.25, totaling $86,693.75 in attorney's fees to be awarded as punitive damages.

  iii.  Expenses as a component of punitive damages

As noted above, "[l]itigation expenses may include not only reasonable attorney's fees, but also any other nontaxable disbursements reasonably necessary to prosecuting the action." *Berry*, 223 Conn. at 832. Lloyds has

12

included a schedule of litigation expenses it contends are attributable to the fraud claims in this action, totaling $1,069.88 and including expenses for international telephone calls, mileage to the international deposition of a fraud witness, meals while on travel for this deposition, postage, FedEx shipments, parking, and copying fees. [Dkt. 433-1, Summary of Invoices re: Fraud Claims] As these expenses stemmed directly from litigation of the fraud claims, they are properly included in an award of punitive damages. Consequently, the Court awards to Lloyds $1,069.88 for compensation of these expenses as part of the jury's award of punitive damages.

## Costs

Federal Rule of Civil Procedure 54(d)(1) governs costs awarded to a prevailing party and provides in relevant part: "Costs Other Than Attorney's Fees. Unless a federal statute, these rules, or a court order provides otherwise, costs-- other than attorney's fees--should be allowed to the prevailing party." Costs are defined statutorily and include: fees of the clerk and marshal, fees for printed or electronically recorded transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case, docket fees, compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services. 28 U.S.C. § 1920. See also *Taniguchi v. Kan Pacific Saipan, Ltd.*, 132 S. Ct. 1997, 2001 (2012) ("We have held that § 1920 defines the term 'costs' as used in Rule 54(d). . . In so doing, we rejected the view

13

that the discretion granted by Rule 54(d) is a separate source of power to tax as costs expenses not enumerated in § 1920.") (internal exclamation marks and citations omitted). "A prevailing party is one that has 'succeeded on any significant issue in litigation which achieved some of the benefit the party sought in bringing suit,' such that the party is able to 'point to a resolution of the dispute which changes the legal relationship between itself and the [adversary].'" *MacLeod v. Procter & Gamble Disability Ben. Plan*, 460 F. Supp. 2d 340, 350 (D. Conn. 2006) (MRK) (citing *Kerin v. USPS*, 218 F.3d 185, 189 n. 1 (2d Cir. 2000) (internal citations omitted). "For a plaintiff to be considered a 'prevailing party,' ... he need not have succeeded on 'the central issue' in the case, ..., and need not have 'obtain[ed] the primary relief sought' ...." *Bristol Tech., Inc. v. Microsoft Corp.*, 127 F. Supp. 2d 85, 93 (D. Conn. 2000) (JCH) (awarding costs to party for success on CUTPA claim despite failure of antitrust claims) (citing *LeBlanc–Sternberg*, 143 F.3d at 757).

As Lloyds prevailed in its fraud claim against Ensign and Ross it is thus a "prevailing party" under Rule 54(d)(1) and entitled to statutory costs. Lloyds has provided a Bill of Costs, including deposition expenses for the depositions of James Ross, Tim Gallagher, Skip Braver, Chris Switzer, Philip Melillo, Roger Boober, Arrigoni, and Philippe Brun, the cost of service of its third party complaint, copying costs, and docket fees. [Dkt. No. 433-3, Bill of Costs] The Court thus awards Lloyds costs arising from the fraud claims.

The Court, however, declines to award Lloyds costs for copying as listed in line E of Lloyds' Bill of Costs, Exhibit C, Docket no. 433-3, as Lloyds has claimed

"All Copying Costs" and not just those attributable to the fraud claims. [Dkt. No. 433-3, Exhibit C] Likewise, the Court declines to award costs for the depositions of Skip Braver, Philip Melillo, Tim Gallagher, Arrigoni, Roger Boober and Chris Switzer as their involvement in this action either did not stem from the fraud claims, Lloyds did not purport to use their testimony at trial to support the fraud claims, or Lloyds has failed to identify if or what portion of the depositions related to the fraud claims. As an example, the Joint Trial Memorandum filed by Arrigoni and Lloyds on August 15, 2011 lists Philip Melillo as having relevant deposition testimony regarding "communications with Jon Arrigoni, Lloyds of London, Penobscot Group, Inc., damages sustained to the vessel, monies loaned to Ensign Yachts, Inc., losses sustained by the plaintiff, et cetera." [Dkt. 342, Trial Memo by Arrigoni and Lloyds, p.22] He was also listed to offer testimony

> regarding his handling of the Plaintiff's claim for damage to the vessel in question on behalf of the Plaintiff, including (but not limited to): his background and friendship with James Ross; the date he was retained to investigate the claim; the timeline of said claim; authentication of any claims diary he may have kept pertaining to the claim; the persons with whom the witness communicated regarding said claim; authentication of communications he sent pertaining to the claim; the dates, medium, sequence and substance of those communications; the substance of the claim itself; the circumstances of the loan he extended to James Ross to fund the repairs on the vessel; and any statements made by James Ross and/or Ensign Yachts, Inc. pertaining to the vessel and/or the claim.

Furthermore, the same Trial Memo lists Tim Gallagher as a witness able to testify to he will testify including but not limited to the following: "damages sustained by the 2008 Model Year, 55' Cigarette Super Yacht (H.I.N. CSS US510E708) and his

15

photographs." [*Id*. at p. 23]  Neither of these witnesses is listed as having information supportive of the fraud claims in this action.

Thus, the Court grants costs to Lloyds in the amount of $4,265.79 for the costs stemming from the fraud claims.

## Conclusion

The Court hereby GRANTS to Lloyds punitive damages in the amount of $87,763.63 (representing $86,693.75 for attorneys' fees and $1,069.88 for litigation expenses), plus costs in the amount of $4,265.79 pursuant to F.R.C.P. 54(d)(1), in addition to the $13,683.92 in actual damages awarded by the jury.

IT IS SO ORDERED.
_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: September 24, 2012